IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUZATULLAH, *et al.*, <br><br> Petitioners, <br><br> v. <br><br> DONALD RUMSFELD, <br> Secretary, United Stated Department of Defense, *et al.*, <br><br> Respondents. | Civil Action No. 06-CV-01707 (GK) |

### DECLARATION OF COLONEL ROSE M. MILLER

I, Colonel Rose M. Miller, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I currently serve as Commander of Task Force Guardian, Combined / Joint Task Force Force-76 ("CJTF-76"), as well as Commander of Detention Operations, CJTF-76. The statements in this declaration are based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. CJTF-76 is headquartered at Bagram Airfield in Afghanistan. CJTF-76, along with Afghan National Security Forces, conducts full spectrum operations to defeat al Qaeda, the Taliban, and associated movements. CJTF-76 integrates joint, interagency and multinational forces partnered with the Afghans in order to establish security, deter the re-emergence of terrorism, and enhance the sovereignty of Afghanistan.

3. Task Force Guardian, a subordinate unit of CJTF-76, is under United States national command and control. Task Force Guardian is responsible for operating the Bagram Theater

1

Internment Facility ("BTIF"), a Department of Defense ("DoD") detention facility located at the Bagram Airfield. I have served as the Commander of Task Force Guardian and Commander of Detention Operations, CJTF-76, since December 2005. In this position, I am responsible for all aspects of detention operations for CJTF-76.

### Bagram Airfield, Afghanistan

4. Bagram Airfield is located approximately forty miles north of Kabul in the Parwan province of the Islamic Republic of Afghanistan ("Afghanistan"). In the military campaign against al Qaeda and the Taliban regime in Afghanistan, American troops were deployed to the base starting in late 2001 and early 2002, along with multinational armed forces, and had priority use of the airfield for coalition operations. The United States' use of Bagram Airfield was and is necessitated by its ongoing war against al Qaeda, the Taliban and their affiliates and supporters.

5. U.S. and Coalition military operations are conducted from Bagram Airfield. Currently, the nature of the United States' use of Bagram Airfield is pursuant to an Accommodation Consignment Agreement for Lands and Facilities at Bagram Airfield between the Islamic Republic of Afghanistan and the United States of America, executed on September 28, 2006. See Exhibit 1 (Lease Agreement). This agreement follows similar such arrangements dating back to at least 2003. Under this Agreement, Afghanistan, as the "host nation," consigns all facilities and land located at Bagram Airfield "for use by the United States and coalition forces for military purposes." This Agreement continues until the United States (or its successors) determine that the premises are no longer required for its use.

6. A significant multinational presence exists at Bagram Airfield as part of CJTF-76's

2

mission. While the United States guards Bagram Airfield, there are numerous national compounds located within it. Each nation separately controls access to its respective compound on the Airfield. The United States does not have complete, plenary jurisdiction on Bagram Airfield.

7. Afghan citizens enter Bagram Airfield on a daily basis. These Afghans range from local nationals performing contracted work (such as cleaning services) to representatives of the Afghan government.

### The Bagram Theater Internment Facility

8. The United States and its multinational partners are conducting an ongoing military campaign against al Qaeda, the Taliban regime, and associated forces in Afghanistan. During the execution of this campaign, the U.S. Armed Forces and allied forces have captured or procured the surrender of thousands of individuals believed to be members or supporters of either al Qaeda or the Taliban. Since the war began in Afghanistan, the United States has captured, screened and released many individuals. A small percentage of these individuals are or have been detained at the Bagram Theater Internment Facility. The detention of these enemy combatants prevents them from returning to the battlefield and engaging in further armed attacks against innocent civilians and U.S. and coalition forces. Detention also serves as a deterrent against future attacks by denying the enemy the fighters needed to conduct war. Interrogations during detention enable the United States to gather important intelligence to prevent future attacks.

9. DoD has registered individuals held under its control at the BTIF with the

International Committee of the Red Cross ("ICRC"). The ICRC has regular access to this facility and conducts private interviews with detainees. Additionally, representatives of the Government of Afghanistan have access to Afghan detainees at the BTIF.

### Assessment of Enemy Combatants in Afghanistan

10. Detainees under DoD control in Afghanistan are subject to a review process that first validates whether an individual is an enemy combatant. This status (as an enemy combatant) is initially determined at the place of capture.

11. By direction of the Secretary of Defense, within 90 days of a detainee being brought under DoD control, the detaining combatant commander, or his designee, shall review the initial enemy combatant determination made in the field. Such review is based on all reasonably available and relevant information available on the date of the review and may be subject to further review based upon newly discovered evidence or information. If necessary for a proper review, the detaining combatant commander, or his designee, may interview witnesses, providing they are reasonably available and such interviews would not affect combat, intelligence gathering, law enforcement or support operations. The detaining combatant commander may, at his discretion, convene a panel of commissioned officers to review the available evidence and reach a recommended determination regarding the detainee's status. After the initial 90-day status review, the detaining combatant commander, or his designee, is required, on an annual basis, to reassess the status of each detainee. If the detaining combatant commander, or his designee, determines during any of the enemy combatant reviews that a detainee no longer meets the definition of an enemy combatant, the detainee is released.

12. In Afghanistan, this review process is conducted by the Commanding General,

4

CJTF-76, under the authority delegated by the Secretary of Defense through the combatant commander. As noted above, Secretary of Defense guidance requires a review of the detainee's enemy combatant status by the 90-day point and annually thereafter. At the BTIF, however, such reviews are usually conducted within 75 days of capture and every six months thereafter. CJTF-76 is responsible for establishing the Enemy Combatant Review Board ("ECRB") to accomplish these reviews. The ECRB is a panel of five commissioned officers who evaluate the detainees' status and make a recommendation by majority vote to the Commanding General, CJTF-76, or his designee as to detainees' status. ECRB decisions are based on information derived from a variety of sources, including classified intelligence and testimony from individuals involved in the capture and interrogation of the detainee. The specific implementing guidance for the ECRBs is classified, as are the documents prepared regarding the ECRB's evaluation of the detainee's status.

### Enemy Combatants at Bagram

13. Even if an individual is determined to be an enemy combatant following the reviews discussed above, there are several ways in which the detainee can leave DoD custody in Afghanistan.

14. The Government of Afghanistan sponsors a national reconciliation program designed to allow combatants who are ready to put down their weapons to join in their country's progress by living peaceful and productive lives in Afghan society. The ECRB process described above nominates Afghan detainees from the BTIF for entry into the reconciliation program. Once nominated, individuals are vetted and selected by a Government of Afghanistan commission for return to their village elders and reintegration into society. After DoD releases detainees to the

custody of the Government of Afghanistan for participation in this program, the United States no longer exercises any custody or control over these former detainees.

15. In addition, pursuant to a diplomatic arrangement reached with the Government of Afghanistan, a significant percentage of the Afghan detainees at the BTIF is expected to be transferred to the Government of Afghanistan, likely within the next year. The United States is currently funding the renovation of an Afghan prison, the Afghan National Detention Center. The United States is also providing other aid to the Government of Afghanistan regarding the operation of this prison, both to facilitate these transfers and to ensure an Afghan detention capability which meets international standards. The prison is to be owned and operated by the Government of Afghanistan.

16. Under certain circumstances, the detaining combatant commander is authorized to permit the release of certain enemy combatants (including citizens of Afghanistan) from the BTIF to their home countries. The criteria and procedures for that program are classified. Following the release of these individuals, the United States no longer exercises any custody or control over these former detainees.

17. Some Afghan detainees and detainees who are nationals of third countries are expected to remain in DoD custody either at BTIF or through a transfer to the Guantanamo Bay Naval Base.

**Petitioner Ruzatullah**

18. BTIF has no record of any individual with the exact name of Petitioner Ruzatullah detained at BTIF. An individual with a very similar name is currently detained at the BTIF, however his name is a common one in Afghanistan. Without additional information, we are

unable to conclude that this individual is the petitioner.

19. The ECRB last reviewed this detainee's enemy combatant status on August 24, 2006. Following that review, his status as an enemy combatant was again validated.

### Petitioner Haji Rohullah

20. The BTIF has no record of any individual with the exact name of Petitioner Haji Rohullah currently being detained at the BTIF.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 19 November 2006.

*(signature)*
ROSE M. MILLER
Colonel, U.S. Army
Commander, Task Force Guardian
Commander of Detention Operations,
Combined / Joint Task Force-76

7

**Exhibit 1**
**(Declaration of Colonel Rose M. Miller)**

PARWAN PROVINCE                                            DACA-AED-5-06-6559
                                                           BAGRAM AIRFIELD

ACCOMMODATION CONSIGNMENT AGREEMENT

FOR LANDS AND FACILITIES AT

BAGRAM AIRFIELD

BETWEEN

THE ISLAMIC REPUBLIC OF AFGHANISTAN

REPRESENTED BY

HIS EXCELLENCY GENERAL ABDUL RAHIM WARDAK
MINISTER OF DEFENSE
OF THE OFFICE OF THE MINISTRY OF DEFENSE

AND

THE UNITED STATES OF AMERICA

This ACCOMMODATION CONSIGNMENT AGREEMENT made and entered into this 28th day of September 2006, by and between THE ISLAMIC REPUBLIC OF AFGHANISTAN, REPRESENTED BY HIS EXCELLENCY GENERAL ABDUL RAHIM WARDAK, MINISTER OF DEFENSE, OF THE OFFICE OF THE MINISTRY OF DEFENSE, hereinafter referred to as the HOST NATION, and The UNITED STATES OF AMERICA, hereinafter referred to as the LESSEE, or the UNITED STATES:

WITNESSETH THAT:

WHEREAS: The UNITED STATES and the HOST NATION, hereinafter referred to jointly as the PARTIES, wish to enter into an Accommodation Consignment Agreement, hereinafter referred to as the Agreement, whereby the HOST NATION consigns all facilities and land located at BAGRAM AIRFIELD, PARWAN owned by the HOST NATION, or PARWAN PROVINCE, or PRIVATE INDIVIDUALS, or OTHERS, for use by the UNITED STATES and Coalition Forces for military purposes; and,

WHEREAS: The MINISTER OF DEFENSE, is the bona fide representatives of the HOST NATION for all Real Estate matters legal or otherwise pertaining to or occurring at PARWAN PROVINCE; and has authority to execute Real Estate documents on behalf of THE ISLAMIC REPUBLIC OF AFGHANISTAN; and

WHEREAS: The PARTIES further desire that all previous Real Estate and use agreements at PARWAN PROVINCE, between the UNITED STATES and the HOST NATION, or PARWAN PROVINCE, or PRIVATE INDIVIDUALS, or OTHERS, will be terminated upon the execution of this Agreement by both PARTIES.

NOW THEREFORE, in accordance with the desires of the PARTIES and in consideration of the mutual benefits to be derived therefrom, the PARTIES hereto mutually covenant and agree as follows:

1. The HOST NATION hereby consigns to the UNITED STATES to have and to hold for the exclusive use of the UNITED STATES Forces land, facilities, and appurtances currently owned by or otherwise under the control of the HOST NATION, or PARWAN PROVINCE, or PRIVATE INDIVIDUALS, or OTHERS, at PARWAN PROVINCE, hereinafter referred to as "the Premises" described as: One parcel

HN_____

US_____

PARWAN PROVINCE                                         DACA-AED-5-06-6559
                                                        BAGRAM AIRFIELD

of land containing approximately 8082 jeribs (approximately 16,164,248 square meters) located within PARWAN Province, Afghanistan, and more particularly described as located within the following grid coordinates:

42SWD2165165842
42SWD2220765799
42SWD2285465102
42SWD2297564547
42SWD2297263721
42SWD2301863125
42SWD2309363085
42SWD2371563710
42SWD2437965919
42SWD2506864666
42SWD2653864898
42SWD2787565943
42SWD2722267302
42SWD2561568407
42SWD2587668650
42SWD2575668797
42SWD2609869452
42SWD2573668823
42SWD2549369261
42SWD2482269430
42SWD2481868906
42SWD2441469060
42SWD2420468236
42SWD2356868275
42SWD2265766138
42SWD2240365893
42SWD2274064648
42SWD2371364596
42SWD2384764764
42SWD2382964921
42SWD2275065491
42SWD2257165535
42SWD2248166374
42SWD2311267244
42SWD2430968936
42SWD2669664709
42SWD2701864970
42SWD2369868338

as shown in purple in Exhibit "A", attached hereto and made a part of this agreement, to be used for LESSEE'S purposes.

2. The **UNITED STATES** shall have the right to assign this agreement to a successor nation or organization. This agreement in its entirety shall apply to the **UNITED STATES** and the successor nations or organizations, hereinafter referred to as "the Successor."

3. The **UNITED STATES** shall have the right to enter into a Lease or Local Administrative Agreement with successor nations or organizations for any and all fixtures, additions, alterations, improvements, or structures owned by the **UNITED STATES** and located on the property which is the subject of this agreement.

4. The term of this Agreement shall commence the earlier the date of execution by the **HOST NATION**, or 31 days from the date of this Agreement and shall continue until the **UNITED STATES** or its successors determine that the Premises are no longer required for its use.

HN_____
US_____

PARWAN PROVINCE                                                DACA-AED-5-06-6559
                                                               BAGRAM AIRFIELD

5. The **HOST NATION** makes the Premises available to the **UNITED STATES** without rental or any other consideration for use of the Premises.

6. The **UNITED STATES** shall be responsible for obtaining and making payment of all other charges for utilities and services it deems necessary to its operations, including but not limited to heat, electricity, hot water, refuse collection, annual cleaning and adjustment of heating systems. Arrangements and payments of utilities and services used shall be made by separate contract.

7. The **UNITED STATES** shall have the right, during the existence of this Agreement, to make alterations and additions, including, but not limited to grade, condition, installing drainage facilities, place gravel or hard stand, attach fixtures, erect improvements and structures or signs, and remove all obstructions which may constitute a hindrance, in or upon the Premises. Any such fixtures, additions, alterations, improvements or structures, so placed in upon or attached to the said Premises, shall remain the property of the **UNITED STATES** and, at the option of the **UNITED STATES**, may be left in place, removed or otherwise disposed of by the **UNITED STATES**, except as otherwise directed in this Agreement. If the **UNITED STATES** elects to leave in place any or all of the said additions, fixtures, structures or improvements, it shall have no further obligation with respect to restoration of any of the Premises to the previous condition. Any such fixtures, structures or improvements abandoned by the **UNITED STATES** shall become the property of the **HOST NATION**.

8. The **MINISTER OF DEFENSE** hereby warrants and guarantees that the **HOST NATION** is the sole owner of the Premises and/or has the right, without any restrictions, to grant the use of the Premises. The **HOST NATION** will hold the **UNITED STATES** harmless against any claim arising out of the **UNITED STATES'** possession of land encompassed by the Premises. Any person that brings a claim for possession of land encompassed by the Premises will be directed to the **HOST NATION** through the **MINISTRY OF DEFENSE** or its representative, who shall process the claim and make a decision to accept the claim or deny the claim, whichever the **HOST NATION** deems appropriate. In cases where the **HOST NATION** makes a decision to honor the claim, the **HOST NATION** is responsible for payment. While **HOST NATION** adjudicates any claim by any third party, **HOST NATION**, authorizes the **UNITED STATES** to continue to with operations and maintain exclusive control of the area described in this Agreement

9. The **HOST NATION** covenants and warrants that the **UNITED STATES** shall have exclusive, peaceable, undisturbed and uninterrupted possession of the Premises during the existence of this agreement. The **UNITED STATES** shall hold and enjoy the Premises during the period of this agreement without any interruption whatsoever by the **HOST NATION** or its agents.

10. Any notice under the terms of this consignment agreement, including by the **UNITED STATES** to give notice of its intent to terminate the Agreement, shall be in writing signed by a duly authorized representative of the party giving such notice, and if given by the **UNITED STATES**, or the Successor in possession, a copy shall be addressed to:

HE GENERAL ABDUL RAHIM WARDAK
MINISTER OF DEFENSE
OF THE OFFICE OF THE MINISTRY OF DEFENSE
THE ISLAMIC REPUBLIC OF AFGHANISTAN
KABUL, AFGHANISTAN

and if given by the **HOST NATION**, shall be addressed to:

| ATTN: CREST | | U. S. ARMY CORPS OF ENGINEERS |
| CJTF76 CJ7 | | SAVANNAH DISTRICT |
| BAGRAM AIRFIELD, AFGHANISTAN | or, | ATTN: SASRE |
| | | 100 WEST OGLETHORPE STREET |
| | | P.O. BOX 889 |
| | | SAVANNAH, GEORGIA 31402-0889 |

HN_____
US_____ (initialed)

PARWAN PROVINCE                                                                           DACA-AED-5-06-6559
                                                                                          BAGRAM AIRFIELD

11. The **UNITED STATES** or the Successor in possession of the Premises shall have the right to terminate this agreement in whole or in part by providing **HOST NATION** written notice of its intent. If the Agreement is terminated in part, the terms and conditions of the Agreement remain in full force and effect for the remaining Premises.

12. If any Successor elects to terminate this Agreement, in whole or in part, during its use of the Premises, the **UNITED STATES** shall have sixty (60) days from the date the Successor surrenders the Premises to give notice of its intent to resume its use of the surrendered Premises to the **HOST NATION**. The **UNITED STATES** shall have use of the surrendered Premises on the date of its notice to the **HOST NATION**. If the **UNITED STATES** does not provide said notice, the surrendered Premises shall revert to the possession of the **HOST NATION**.

13. This Agreement supersedes all previous agreements between the **UNITED STATES** and **HOST NATION** for the use of Bagram Airfield, including, but not limited to Accommodation Consignment Agreement numbered DACA-AED-5-06-472 dated 30 AUGUST 2006.

14. This Agreement is executed in English. A courtesy translation may be furnished to the **HOST NATION**. In the event of inconsistency between any terms and conditions of this Agreement and its translation, the English language version shall have precedence and control.

IN WITNESS WHEREOF, the PARTIES hereto have hereunto subscribed their names.

FOR THE ISLAMIC REPUBLIC OF AFGHANISTAN:

_____         Witness: _____
HE GENERAL ABDUL RAHIM WARDAK      (DATE)
MINISTER OF DEFENSE
OF THE OFFICE OF THE MINISTRY OF DEFENSE
KABUL, AFGHANISTAN


AND



FOR THE UNITED STATES OF AMERICA:

_____ 9-26-2006           Witness: _____
CHRISTOPHER D. DIRR              (DATE)
REALTY CONTRACTING OFFICER
CONTINGENCY REAL ESTATE SUPPORT TEAM (CREST)
PURSUANT TO AUTHORITY GRANTED BY THE SECRETARY OF THE ARMY
CJTF76 CJ7
BAGRAM AIRFIELD, AFGHANISTAN
DSN: (318) 231-2925


HN_____
US_____

