# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------------x

Ruzatullah, )
     Detainee, )
     United States Air Base at )
     Bagram, Afghanistan; )
      )
Inavatullah, )
     as the Next Friend of Ruzatullah; )
      )     1:06-cv-1701 (GK)
Haji Rohullah, )
     Detainee, )
     United States Air Base at )     **AMENDED PETITION**
     Bagram, Afghanistan; and )     **FOR WRIT OF HABEAS**
      )     **CORPUS**
Baz Mohammad, )
     as the Next Friend of Haji Rohullah, )
      )
          Petitioners/Plaintiffs, )
      )
v. )
      )
DONALD RUMSFELD, )
     Secretary, United States )
     Department of Defense )
     1000 Defense Pentagon )
     Washington, D.C.  20301-1000; )
      )
JOHN DOE, )
     Custodian of Petitioners; and )
      )
JOHN DOE 2, )
     Custodian of Petitioners, )
      )
          Respondents/Defendants. )
      )
Respondents are sued in their official )
capacities. )

-------------------------------------------------------x

1. Petitioner Ruzatullah, who is in the custody of the United States, seeks the Great Writ.[1] He acts on his own behalf and through his Next Friend, Inavatullah.

2. Petitioner Haji Rohullah, who is in the custody of the United States, seeks the Great Writ. He acts on his own behalf and through his Next Friend, Baz Mohammed.

3. Detained Petitioners are citizens of Afghanistan. Though they have committed no wrong, they are being held unlawfully and virtually *incommunicado* in military custody by Respondents at the United States Bagram Air Base in Afghanistan. Petitioners are detained without lawful basis, without charge, and without access to counsel or any fair process by which they might challenge their detention.

4. Petitioners are being held under color and authority of the Executive, and in violation of the Constitution, laws and treaties of the United States as well as in violation of customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioners or to establish in this Court a lawful basis for their detention. This Court should also order injunctive and declaratory relief.

5. Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, or under the November 13, 2001 Executive Order, Respondents Donald H. Rumsfeld, U.S. Secretary of Defense; and John Does 1 and 2, Custodians of Petitioners Ruzatullah and Rohullah, are either ultimately responsible for, or have been charged with the responsibility of maintaining, the custody and control of the detained Petitioners at Bagram.

---

[1] Petitioners filed their original Petition for Writ of Habeas Corpus on October 2, 2006. The Court then ordered Respondents to show cause why the writ should not be granted. In response to the order to show cause, Respondents filed a Motion to Dismiss the Petition. Petitioners do not concede that a Motion to Dismiss is a "responsive pleading" pursuant to Fed. R. Civ. Proc. 15(a). Regardless, Petitioners have complied with Fed. R. Civ. Proc. 15(a), which provides that even after a responsive pleading has been filed, "a party may amend the party's pleading only by leave of court *or* by written consent of the adverse party" (emphasis supplied). Petitioners' counsel obtained the written consent of Respondents' counsel to amend the petition on December 21, 2006. *See* Notice of Filing of Amended Petition and Motion for Entry of Scheduling Order, filed herewith.

# I.
## JURISDICTION

6. Petitioners bring this action pursuant to 28 U.S.C. §§ 2241(a), (c)(1) and (c)(3) and 2242, and invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I, II, and III of, and the Fifth Amendment to the United States Constitution. Because they seek declaratory relief, Petitioners also rely on Fed. R. Civ. P. 57.

7. This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of Habeas Corpus and to entertain the instant Petition under 28 U.S.C. § 2242. This Court is further empowered to entertain the Petition pursuant to the United States Supreme Court's ruling in *Rasul v. Bush*, 542 U.S. 466 (2004). This Court is further empowered to declare the rights and other legal relations of the parties herein by 28 U.S.C. § 2201; to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction; and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

# II.
## VENUE

8. Venue is proper in the United States District Court for the District of Columbia, since the Respondent Rumsfeld resides in the district, a substantial part of the events or omissions giving rise to the claim occurred in the district, and Respondent Rumsfeld is an officer or employee of the United States or any agency thereof acting in his official capacity. 28 U.S.C. §§ 1391(b); 1391(e).

## III.
## PARTIES

9. Petitioner Ruzatullah is an Afghan citizen presently incarcerated and held in Respondents' unlawful custody at the United States Bagram Air Base in Afghanistan.

10. Petitioner Inavatullah is Ruzatullah's brother. Because his brother cannot secure access either to legal counsel or the courts of the United States, Inavatullah acts as his Next Friend.

11. Petitioner Haji Rohullah is an Afghan citizen presently incarcerated and held in Respondents' unlawful custody at the United States Bagram Air Base in Afghanistan.

12. Petitioner Baz Mohammed is Haji Rohullah's friend and relative. Because his relative cannot secure access either to legal counsel or the courts of the United States, Baz Mohammed acts as his Next Friend.

13. Respondent Rumsfeld is the Secretary of the United States Department of Defense. He has been charged with maintaining the custody and control of the detained Petitioners, and is therefore the detained Petitioners' ultimate custodian. Respondent Rumsfeld is sued in his official capacity.

14. The Respondents designated as John Does are fictitiously-named subordinate officers of the United States armed forces who have immediate physical custody of the detained Petitioners.

## IV.
## STATEMENT OF FACTS

15. Petitioners are not, nor have they ever been, enemy aliens, lawful or unlawful belligerents, or combatants of any kind under any definition adopted by the United States Government in any civil or military proceeding.

16. Petitioners are not, nor have they ever been, "enemy combatant[s]" who were "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were

engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld,* 542 U.S. 507, 516 (2004).

17. Petitioners had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, the ensuing armed conflict, or any act of international terrorism attributed by the United States to Al Qaeda or any other terrorist organization.

18. Petitioners have not been afforded any procedures that would satisfy their rights under the most fundamental common law notions of due process, the Constitution, laws and treaties of the United States, or customary international law.

19. Since the United States took the detained petitioners into custody, the United States military has held them virtually *incommunicado* and without legal process. On information and belief, they have been interrogated repeatedly by agents of the United States Departments of Defense and Justice, though they have not been charged with an offense, nor have they been notified of any pending or contemplated charges. They have made no appearance before either a military or civilian tribunal of any sort, nor have they been provided counsel or the means to contact counsel. They have not been informed of their rights under the United States Constitution, the regulations of the United States Military, the Geneva Conventions, the Vienna Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, or customary international law. Indeed, Respondents have taken the position that they should not be told of these rights. As a result, the detained Petitioners are completely unable either to protect, or to vindicate their rights under domestic and international law.

20. On information and belief, the detained Petitioners promptly identified themselves by correct name and nationality to the United States. They each requested that the United States provide them with access to his family and to legal counsel.

21. Petitioner Ruzatullah is an Afghan citizen.  He is approximately 35 years old.  On information and belief, Respondents have assigned him a prisoner identification number of BT 1358 – AB2 – 000816.

22. In or about October, 2006, U.S. military forces forcibly and without warning entered Petitioner Ruzatullah's home in Jalalabad, where he was peacefully enjoying an evening with his family. Petitioner Ruzatullah and his family did not defend themselves, but rather, attempted to cooperate with the U.S. soldiers.

23. After forcibly entering the home of Petitioner Ruzatullah, U.S. military personnel conducted an illegal and unauthorized search of the premises.  Upon information and belief, no guns or weapons of any kind were found on the premises.

24. After the search was completed, Petitioner Ruzatullah, along with his brother and Next Friend Inavatullah, were taken into U.S. military custody.

25. The two brothers were then removed from their home by members of the U.S. military, and transported to the U.S. military base at Bagram.  Petitioners were not permitted any outside contact, and were kept in the exclusive custody and control of the U.S. military at all times. On information and belief, Petitioners were interrogated on numerous occasions prior to and during their transfer from their home to Bagram.

26. Petitioner Inavatullah (Rohullah's brother and Next Friend) was released from U.S. custody after 15 days.  However, Petitioner Ruzatullah was not released, and remains in U.S. custody at Bagram.

27. Petitioner Ruzatullah is a civilian.  He is not, and has never been, a member of the armed forces of any country.

28. Petitioner Ruzatullah is not, and has never been, a member of the Taliban or its army.

29. Petitioner Ruzatullah is not, and has never been, a member of Al Qaeda, or any other terrorist

30. Petitioner Ruzatullah has never taken up arms against the United States or any other country.

31. Petitioner Ruzatullah has never participated, nor been involved in any way, with any attack against the United States or its allied forces in Afghanistan, or in any other country.

32. On information and belief, Petitioner Ruzatullah has never been accused or convicted of any crime in Afghanistan or any other country.

### Petitioner Rohullah

33. Petitioner Rohullah is an Afghan citizen.  He is approximately 40 years old.  He is approximately 180 centimeters tall, and weighs around 75 kilograms.  He has black hair and black eyes and usually wears a short beard.

34. Prior to being detained at Bagram, Petitioner Rohullah worked as a driver to support his family.

35. On or about August, 6, 2006, U.S. military personnel forcibly and without warning entered the home of Petitioner Rohullah's family at Farm-e-hadda in Jalalabad, where Petitioner and his family were visiting with guests.

36. Petitioner Rohullah and his family did not defend themselves, but rather attempted to cooperate with the U.S. soldiers.

37. After forcibly entering the home, U.S. military personnel conducted an illegal and unauthorized search of the premises.  Upon information and belief, no guns or weapons were found on the premises.

38. As a result of the search, some of the family's personal property was destroyed, and many valuable items were taken from the home, including the family's jewelry, electronics, and computers.  In addition, two cars were taken from the premises, along with the registration documents issued to Petitioner Rohullah's family as legal proof of ownership.  None of the family's personal property has been returned, nor has any member of the family been informed why or where the property was taken.

39. After completing the search, U.S. military forces took twelve men (including family members and guests) who were at the house into custody. U.S. forces then took the men to a nearby military base in Jalalabad. After two days, ten of the men were released. However, Petitioner Rohullah and another relative remained in U.S. military custody.

40. On information and belief, Petitioner Rohullah was then taken by U.S. forces to the U.S. military base at Bagram. On information and belief, Petitioner Rohullah was interrogated numerous times prior to and during his transfer to Bagram.

41. Petitioner Rohullah's family learned that he had been transferred to Bagram from a friend of the family who had also been held at Bagram. The friend called the family to tell them that he had seen Petitioner Rohullah inside the Bagram detention facility.

42. Petitioner Rohullah is a civilian. He is not, and has never been, a member of the armed forces of any country.

43. Petitioner Rohullah is not, and has never been, a member of the Taliban or its army.

44. Petitioner Rohullah is not, and has never been, a member of Al Qaeda, or any other terrorist organization.

45. Petitioner Rohullah has never taken up arms against the United States or any other country.

46. Petitioner Rohullah has never participated, nor been involved in any way, with an attack against the United States or its allied forces in Afghanistan, or in any other country.

47. Upon information and belief, Petitioner Rohullah has been in the custody of U.S. military forces in Afghanistan since August 6, 2006, and is presently being detained at the U.S. military detention facility at Bagram.

## Authorization for Use of Military Force

48. In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban Government, then in power in Afghanistan. On September 18, 2001, a Joint Resolution of

Congress authorized President Bush to use force against those "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("AUMF").

49. As Petitioners did not participate in the armed conflict at any point in time, they are not properly detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or the AUMF.

## President Bush's Military Order

50. On November 13, 2001, President Bush issued a Military Order authorizing indefinite detention without due process of law. The Order authorizes Respondent Rumsfeld to detain anyone President Bush has "reason to believe":

    i.  is or was a member of the organization known as al Qaida;

    ii.  has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or

    iii.  has knowingly harbored one or more individuals described in subparagraphs (i) and (ii)

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (November 13, 2001). President Bush must make this determination in writing. The Order was neither authorized nor directed by Congress, and is beyond the scope of the Joint Resolution authorizing the use of military force passed by Congress September 14, 2001.

51. The Military Order vests the President with complete discretion to identify the individuals that fall within its scope. It establishes no standards governing the use of his discretion. Once a person has been detained, the Order contains no provision for him to be notified of the charges

he may face. On the contrary, the Order authorizes detainees to be held without charges. It contains no provision for detainees to be notified of their rights under domestic and international law, and provides neither the right to counsel, nor the right to consular access. It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and no provision for appeal to an Article III court. In fact, the Order expressly bars review by any court. For those detainees who will not be tried before a tribunal, the Order authorizes indefinite and unreviewable detention, based on nothing more than the President's written determination that an individual is subject to its terms.

52. Petitioners are not properly subject to the Executive Order, and, in any event, the Executive Order is unjust, *ultra vires*, and violates the laws, treaties, and Constitution of the United States. Petitioner has been, and is being, detained unlawfully purportedly pursuant President Bush's authority as Commander-in-Chief and/or under the laws and usages of war.

**Bagram Air Base**

53. Bagram Air Base, where the detained Petitioners are presently incarcerated, is subject to the exclusive jurisdiction and control of the United States military. The detained Petitioners are in the physical and legal custody of the United States, at a U.S. military facility that is subject to U.S. constitutional and statutory law, and answerable to the federal judiciary. *See Rasul v. Bush*, 124 S. Ct. 2686 (2004).

54. While Bagram Air Base has been in operation since 2002, relatively little has been made public about the detention facility where Afghans and many other foreign nationals detained by U.S. forces are held. *See, e.g.,* Tim Golden and Eric Schmitt, *"A Growing Afghan Prison Rivals Bleak Guantanamo", New York Times*, Feb. 26, 2006. However, both military personnel and former detainees have described the prison conditions at Bagram to be far worse than those at Guantanamo. *Id.* at 2 (quoting a Defense Department official who had toured both detention facilities as stating "Anyone who has been to Bagram would tell you its worse."). *See also,*

Nicholas D. Kristof, "Sami's Shame, And Ours", *New York Times*, October 17, 2006 (quoting a

former Bagram prisoner, presently detained at Guantanamo, describing the time he spent at

Bagram as "the longest days of [his] life").

55. Like the detainees who were transferred to Guantanamo in its early days, the Bagram detainees

are reportedly held in primitive wire-mesh cages. *See* Golden and Schmitt, *supra,* at p. 4. A

former prisoner who had been detained for more than two years at Bagram described his cell as

"a cage" like ones he had seen where they kept the animals at the Karachi Zoo in Pakistan. *Id.*

Former detainees have described sharing their "cages" – which often containing nothing more

than a bucket to serve as a toilet – with dozens of other detainees. *Id. See also, e.g.,* Matthew

Pennington, "Inmates detail U.S. prison near Kabul"*, Associated Press*, October 1, 2006.

56. According to Afghan authorities, U.S. forces often arrest Afghans based on "wrong

information," and detainees may be taken into custody based on nothing more than an

accusation from another individual bearing a grudge, or having some interest in seeing the

detainee imprisoned. *Id.*

57. Apparently, the detainee may be taken into custody and remain there indefinitely -- solely for

the purpose of interrogation. In February, 2006, Col. James R. Yonts, the American military

spokesman in Kabul, wrote this in response to an inquiry from the *New York Times*:

> "We hold them for two reasons: to question them and get intelligence
> from them, *or* because they've committed violence against the coalition
> or the people of Afghanistan…We regularly review the status of the
> detainees, and *if a detainee has no intelligence value* and if we believe he
> will no longer attack the coalition or forces of the central government,
> we will release him..."

Sultan M. Munadi and Carlotta Gall, "Militant Inmates Riot and Seize Control of

Cellblock in Afghan Prison", *New York Times,* February 26, 2006 at p. 3 (emphasis supplied).

58. Department of Defense officials have expressed concern that while the Bagram detention

facility was not built to house prisoners for more than a brief period of time, "now it's a *long-*

supplied).    Moreover, they have admitted that the "[Department of Defense] system for

releasing detainees whose intelligence value turned out to be negligible did not keep pace with

the numbers [they] were bringing in." *Id.*

59. One Pentagon official has stated that, as of February 2006, the *average* stay of a detainee at

Bagram is more than fourteen months. *Id.*

60. Former Bagram detainees have consistently described abusive interrogation tactics amounting

to torture, cruel, inhuman or degrading treatment at the hands of their captors.  For example,

Bagram detainees have reported being held in solitary confinement for up to eleven months

straight, as well as being starved, beaten, kicked, left out in the freezing cold, and sexually

humiliated. Pennington, *supra,* at p. 2; Kristof, *supra,* at p. 1.

61. Importantly, at least two Bagram detainees have died while in custody.  *See* Tim Golden,

"Army Faltered in Investigating Detainee Abuse", *New York Times*, May 22, 2005.  Documents

leaked from an Army investigation into the deaths revealed that at least one of the deaths had

been ruled a homicide, contradicting the military's earlier assertions that both had died of

natural causes.  *Id.*   In that case, the detainee was reported killed over a five-day period by

"destroying his leg muscle tissue with repeated unlawful knee strikes" that according to the

medical examiner were so severe that "even if he had survived, both legs would have to be

amputated."  Douglas Jehl, "Army Details Scale of Abuse in Afghan Jail", *New York Times,*

March 12, 2005.   The other detainee who died while in custody at Bagram was similarly

tortured, and died of a pulmonary embolism from being beaten while he was chained to the

ceiling by his wrists. *Id.*

62. The Army Criminal Investigation Command also revealed that the prisoner abuse at Bagram

went far beyond the two deaths, and described the abuse of another Afghan prisoner who had

been tortured by "kicks to the groin and leg, shoving or slamming him into walls/tables, forcing

the detainee to maintain painful, contorted body positions during interview and forcing water into his mouth until he could not breathe." *Id.* Another detainee was abused by a military interrogator who had "placed his penis along the face" of the detainee, and later "simulated anally sodomizing him (over his clothes)." *Id.*

63. At least one Department of Defense official has commented that unlike the Guantanamo detainees, the Bagram detainees have been successfully kept "out of sight, out of mind." Golden and Schmitt, *supra,* at p. 3.

## V.
## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

(COMMON LAW DUE PROCESS AND THE FIFTH
AMENDMENT TO THE UNITED STATES CONSTITUTION –
UNLAWFUL DEPRIVATION OF LIBERTY)

64. Petitioners incorporate the by reference all preceding paragraphs as if set forth fully herein.

65. By the actions described above, Respondents, acting under color of law, have violated and continue to violate common law principles of due process as well as the Due Process Clause of the Fifth Amendment to the Constitution of the United States. Respondents' actions deny Petitioners the process accorded to persons seized and detained by the United States military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice, Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

66. To the extent that Petitioners' detention purports to be authorized by the Executive Order, that Order violates the Fifth Amendment on its face and as applied to Petitioners.

13

67. Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any

other relief the court may deem appropriate.

## SECOND CLAIM FOR RELIEF

### (DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION – UNLAWFUL CONDITIONS OF CONFINEMENT)

68. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

69. By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioners to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

70. Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## THIRD CLAIM FOR RELIEF

### (ARTICLE II OF THE UNITED STATES CONSTITUTION -- UNLAWFUL DETENTION)

71. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

72. Petitioners are not, nor have they ever been, enemy aliens, lawful or unlawful belligerents, or combatants of any kind. The Executive lacks the authority to order or direct military officials to detain civilians who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, 542 U.S. 507, 522n.1 (2004).

73. By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering

and directing that military officials seize Petitioners and transfer them to military detention, and by authorizing and ordering their continued military detention. Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioners.

74. The military seizure and detention of Petitioners by the Respondents is *ultra vires* and illegal because it is in violation of Article II of the United States Constitution. To the extent that the Executive asserts that Petitioners' detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioners.

75. To the extent that Respondents assert that their authority to detain Petitioners derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

76. Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.


### FOURTH CLAIM FOR RELIEF

### (VIOLATION OF THE APA -- ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)

77. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

78. Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or who were not engaged in combat against the United States. *See, e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized

without further proceedings to determine what acts they have committed and what penalty should be imposed.").

79. By arbitrarily and capriciously detaining Petitioners in military custody in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

80. Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## FIFTH CLAIM FOR RELIEF

### (VIOLATION OF THE APA -- TORTURE, CRUEL, INHUMAN OR DEGRADING TREATMENT)

81. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

82. By the actions described above, the Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Petitioners to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

83. Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## SIXTH CLAIM FOR RELIEF

### (FIFTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION – VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

84. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

85. By denying Petitioners access to counsel or the courts, Respondents have violated Petitioners' rights under the Fifth and Sixth Amendments to the U.S. Constitution.

86. Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## SEVENTH CLAIM FOR RELIEF

### (INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW – ARBITRARY DENIAL OF DUE PROCESS)

87. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

88. By the actions described above, Respondents have denied and continue to deny Petitioners the process due to persons seized and detained by the United States military in times of armed conflict as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

89. Because Respondents are detaining Petitioners "under or by color of the authority of the United States" and "in violation of the Constitution or laws or treaties of the United States," Petitioners' claim arises under 28 U.S.C.§ 2241, and they are entitled to habeas relief.

90. Petitioners are also entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

## EIGHTH CLAIM FOR RELIEF

### (INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW – TORTURE, CRUEL, INHUMAN OR DEGRADING TREATMENT)

91. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

92. By the actions described above, Respondents have denied and continue to deny Petitioners the right to be from torture, cruel, inhuman or degrading treatment of all persons seized and detained by the United States military in times of armed conflict as establish by customary international humanitarian and human rights law -- as reflected, expressed, and defined in

17

multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

93. Because Respondents are detaining Petitioners "under or by color of the authority of the United States" and "in violation of the Constitution or laws or treaties of the United States," Petitioners' claim arises under 28 U.S.C.§ 2241, and they are entitled to habeas relief.

94. Petitioners are also entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate

## NINTH CLAIM FOR RELIEF

### (GENEVA CONVENTIONS
### – ARBITRARY DENIAL OF DUE PROCESS)

95. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

96. By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioners the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

97. Violations of the Geneva Conventions are direct treaty violations and are also violations of customary international law, and constitute enforceable claims under 28 U.S.C. § 2241 (c)(3).

98. Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

99. Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## TENTH CLAIM FOR RELIEF

### (GENEVA CONVENTIONS
### – TORTURE, CRUEL, INHUMAN OR DEGRADING TREATMENT)

100. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

101. By the actions described above, Respondents have denied and continue to deny Petitioners the right to be free from torture, cruel, inhuman or degrading treatment of all persons seized and detained in times of armed conflict as establish by customary international humanitarian and human rights law as established by specific provisions of the Geneva Conventions.

102. Violations of the Geneva Conventions are direct treaty violations and are also violations of customary international law, and constitute enforceable claims under 28 U.S.C. § 2241 (c)(3).

103. Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

104. Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## VI.
## PRAYER FOR RELIEF

WHEREFORE, petitioners pray for relief as follows:

1. Grant Petitioners Inavatullah and Baz Mohammad Next Friend status;

2. Order the detained petitioners released from Respondents' unlawful custody;

3. Order Respondents to allow counsel to meet and confer with the detained petitioners, in private and unmonitored attorney-client conversations;

4. Order Respondents to make a prompt return to the writ in accordance with 28 U.S.C. § 2243 and to the extent Respondents contest any material factual allegations in this Petition, schedule an evidentiary hearing, at which petitioners may adduce proof in support of their allegations;

5.     Such other relief as the Court may deem necessary and appropriate to protect

petitioners' rights under the United States Constitution, the Habeas Statute, and

International Law.

Dated: December 22, 2006                    Respectfully Submitted,


_____

TINA M. FOSTER
*Admitted pursuant to L. Civ. R. 83.2(g)*

International Justice Network
PO BOX 610119
Bayside, NY 11361-0119
Tel: 917.442.9580
Fax: 917.591.3353

*Attorney for Petitioners*

**VERIFICATION**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 22 day of December, 2006.

_____
Tina M. Foster

CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Pursuant to L. Civ. R. 83.2(g), I certify that I am representing Petitioners without compensation.

Executed on this 22 day of December, 2006.

_____
Tina M. Foster

**PRIVILEGED AND CONFIDENTIAL
ATTORNEY CLIENT COMMUNICATION**

My name is **Baz Mohammad**, and I am a citizen of **Afghanistan** (country). I am the **Friend** of **Rohullah**, who is a citizen of **Afghanistan**, currently being detained incommunicado at **Bagram**.

I have had the concept of "next friend" explained to me in my native language of **Pashto**, and I know that **Rohullah** would want me to take legal action on his behalf to secure his release.

I hereby authorize U.S. human rights attorney Tina Monshipour Foster, Esq., and any attorneys assigned by her, to file a case in U.S. courts seeking the release of prisoner **Rohullah**, and to take any other legal action in US or international venues that is necessary and appropriate to defend his fundamental human rights.

DATE:  **28 September 2006**

Signature of Next Friend: _____

Name of attorney taking authorization: _____

Signature of attorney taking authorization: _____

**PRIVILEGED AND CONFIDENTIAL**
**ATTORNEY CLIENT COMMUNICATION**

My name is **Inayatullah**, and I am a citizen of **Afghanistan**. I am the **Brother** of **Ruzatullah**, who is a citizen of **Afghanistan**, currently being detained incommunicado at **Bagram**.

I have had the concept of "next friend" explained to me in my native language of **Pashto**, and I know that **Ruzatullah** would want me to take legal action on his behalf to secure his release.

I hereby authorize U.S. human rights attorney Tina Monshipour Foster, Esq., and any attorneys assigned by her, to file a case in U.S. courts seeking the release of prisoner **Ruzatullah**, and to take any other legal action in US or international venues that is necessary and appropriate to defend his fundamental human rights.

DATE    **29 September 2006**

Signature of Next Friend: _____

Name of attorney taking authorization _____

Signature of attorney taking authorization _____