RUZATULLAH V. GATES, Civil Action No. 06 CV 01707 (GK)

# EXHIBIT 2

**Of Petitioner Ruzatullah's Opposition to Respondents'
Supplemental Motion to Dismiss**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------- x

RUZATULLAH, ET AL.,                          :

      Petitioners,                           :

                                   :

v.                                           :

                                   :    Civil Action No. 06 CV 01707 (GK)

ROBERT M. GATES,                             :
    Secretary, United States                 :
    Department of Defense, *et al.*,          :

      Respondent/Defendant.                 :

                                   :

------------------------------------------------------------- X

### Information From Mr. Ahadullah Azimi

    I, MR. AHADULLAH AZIMI, declare, pursuant to 28 U.S.C. §1746, as follows:

    1.    I am a citizen of Afghanistan and currently reside in Kabul province, located in central Afghanistan.

    2.    I am a duly-licensed defense attorney in Afghanistan, and as such, I am authorized to practice law throughout Afghanistan. I have been employed as a defense lawyer by the International Legal Foundation-Afghanistan (ILF-Afghanistan) since 2004. During that time, I have served as an ILF-Afghanistan staff attorney and head of the provincial ILF- Afghanistan office in Herat (western Afghanistan). I am currently a supervising attorney in the main office in Kabul.

    3.    ILF- Afghanistan is a project of the International Legal Foundation (ILF), a New York-based not-for-profit public defender organization. The ILF was created to assist in the establishment of fair criminal justice systems in post-conflict countries. To fulfill this mission, the ILF hires and trains local lawyers to work in its offices as public defenders. These attorneys are then mentored on a day-to-day basis by expert criminal defense attorneys from North America and Europe.

    4.    In August 2003, the ILF established its first office in Afghanistan with two lawyers. To date, ILF-Afghanistan has 34 defense lawyers and six paralegals in six offices nationwide. ILF-Afghanistan's attorneys represent -- free of cost -- poor men, women and children who are accused of crimes throughout Afghanistan. ILF-Afghanistan serves to implement the laws of Afghanistan by making

1

1  sure that there are defense attorneys available to represent people who are suspected or accused of crimes.

2  Since its first office opened four years ago, ILF-Afghanistan's attorneys have represented more than

3  3,300 detainees.

4  **Ordinary Practice for an Attorney to Access Detainees in Afghanistan**

5      5.      Pursuant to Article 31 of the Afghan Constitution,[1] every individual has the right to an

6  attorney from the moment of arrest. The ordinary practice in Afghanistan, a practice in which I have

7  participated countless times, is for defense attorneys to go directly to the detention centers and ask

8  detainees whether they need a lawyer, and if so, represent them.

9      6.      The ordinary practice for an attorney to gain access to prisons or detention centers is as

10  follows: The head of the legal aid office will send a letter introducing the lawyer to the Ministry of Justice,

11  which has authority over prisons, or the Ministry of Interior, which has authority over pretrial detention

12  centers.   Once the letter is submitted to the relevant ministry, it will be distributed to the related

13  government agencies.   An ILF-Afghanistan attorney is then permitted to access the prison or jail by

14  showing his staff identity card.

15      7.      This is the practice I have used numerous times to access the inmates held at Pul-i Charkhi

16  prison. Pul-i Charkhi prison is located just east of Kabul, and it houses about 2700 inmates.  Because the

17  Afghan Ministry of Justice (MoJ) is in charge of prisons, it has responsibility over Pul-i Charkhi prison.

18  In general, Pul-i Charkhi is a facility for sentenced inmates.  However, pretrial detainees have been housed

19  there (under the MoJ's authority) if the inmate needed to be housed separately, or there was no room in a

20  district detention center.

21      8.      In my three years as an attorney with ILF-Afghanistan, I have never had any problems

22  accessing detainees held by the Afghan MoJ at Pul-i Charkhi prison. In fact, in December of 2006, at the

23  request of the then-head of Pul-i Charkhi prison, a colleague and I conducted a seminar for inmates to

24

25  [1] Article 31 of the Afghan Constitution provides:

26      Upon arrest, or to prove truth, every individual can appoint a defense attorney. Immediately upon arrest, the
        accused shall have the right to be informed of the nature of the accusation, and appear before the court within
        the time limit specified by law. In criminal cases, the state shall appoint a defense attorney for the indigent.

27      Confidentiality of conversations, correspondence, and communications between the accused and their attorney
        shall be secure from any kind of violation. The duties and powers of defense attorneys shall be regulated by law.

28

1  educate them about their basic legal rights, so that, if they did not have lawyers, they could try to exercise
2  their legal rights on their own.

3  **Efforts to Obtain Access to the Pul-i Charkhi Detainees Formerly Held at Bagram Airbase**

4       9.     I spent seven months trying to gain access to the detainees held at Bagram Airbase. I was
5  not successful.

6      10.    Shortly thereafter, I learned that several inmates had been transferred from Bagram to Pul-i
7  Charkhi prison. At the beginning of June 2007, I went to the prison and requested access to the detainees.
8  However, I was informed by prison staff that the former Bagram detainees were housed in a separate part
9  of the prison that was <u>not</u> run by the MoJ. I was told that there were approximately 11 former Bagram
10  prisoners being held in a new wing of the prison called the Afghan National Defense Facility (ANDF). I
11  believe that ANDF/Pul-i Charkhi was renovated by the Americans.

12      11.    During this visit, the prison staff also informed me that, unlike the other sections of the
13  prison, ANDF/Pul-i Charkhi was not under the authority of the Afghan MoJ. Instead, the guards for this
14  section told me that I would need a letter from the Afghan Ministry of Defense (MoD) stating that I have
15  been granted permission to access the Bagram prisoners at ANDF/Pul-i Charkhi.

16      12.    ILF-A's Deputy Director wrote a letter to the Afghan MoD introducing me as an attorney
17  and requesting permission to allow me to access the detainees for the purpose of assisting them to exercise
18  their legal rights. The Afghan MoD granted me written permission.

19      13.    On June 13, 2007, I returned to ANDF/Pul-i Charkhi. I spoke with Lt. Col. Mohammad
20  Nader Khan, MoD's legal advisor for ANDF/Pul-i Charkhi. Lt. Col. Khan was there with an American
21  military person named Anderson. I believe that Anderson worked for the Combined Security Transition
22  Command – Afghanistan (CSTC-A).

23      14.    Anderson told me that the interrogators for the National Security Police (NDS) informed
24  them that the National Security Court issued an order that barred defense attorneys from visiting detainees
25  until their file had been transferred to the Court. In my three years as a defense attorney with ILF-A, I
26  have never seen any such order. I explained that I had a letter from the Afghan Ministry of Defense
27  granting me access to the detainees held at ANDF/Pul-i Charkhi. I showed them the letter.

28      15.    Lt. Col. Khan acknowledged that under the Afghan Constitution, these detainees were

1 entitled to an attorney.  However, Anderson repeated that the NDS said no defense attorneys ould be

2 permitted access until the file was with the Court.  I told them that these detainees had been in custody for

3 two or three years without the file being sent to the Court, so that was not a satisfactory answer.[2]  Lt. Col.

4 Khan said he would look into the matter.

5        16.    Prison staff later informed me that there are 56 former Bagram detainees imprisoned in

6 ANDF/Pul-i Charkhi.

7 **The National Security Court and Its Dissolution**

8        17.    Despite the fact that the former Bagram detainees were held in military custody, I was

9 initially told that the cases of the former Bagram detainees were being investigated by the National

10 Security Police (NDS) and prosecuted in the National Security Court.  The National Security Court was

11 set up by the Russians to investigate, prosecute, and convict Afghans who were accused of crimes against

12 the internal or external security of the Government (that is, "national security" crimes).  Since the fall of

13 the Taliban, the National Security Court has tried suspected Taliban and other detainees suspected of

14 terrorism- or weapons-related offenses.    However, such detainees are normally housed at the NDS

15 detention facility, not a military facility.

16        18.    On July 11, 2007, I learned that the Afghan government dissolved the National Security

17 Court.  It does not appear that Bagram detainees will be tried in any Afghan court in the near future.

18        19.    Because the National Security Court had been dissolved, I went back to Pul-i Charkhi

19 prison to try to access the detainees.  I met with Lt. Col. Khan again, and he told me that he would speak

20 with his American advisors and get back to me.

21        20.    Later, Lt. Col. Khan told me that I would need a letter signed by the Minister of Defense

22 himself which authorized access to the detainees.  I have not yet been able to secure such a letter.

23        21.    There is no legal reason why the Minister would need to approve personally my access to

24 [2] In addition, Afghan law permits defense lawyers to *participate* in investigations. Interim Code of Criminal Procedure article 38
provides:

25        1. The defense counsel has the right to be present at all times during the interrogation of the suspect.

        2. The suspect and the defense counsel have the right to be present during searches, confrontations, line-up procedures and
26 expert examinations as well as during the trial.

        3. In the investigation phase the Saranwal and the judicial police shall notify the suspect and his defense counsel of searches,
27 confrontations, line-up procedures and expert examinations in order to allow them to be present. This duty can be waived only
when there is an urgent need to conduct the said operations, which is defined as when it is a flagrante delicto crime or there is a

28

1  the detainees at ANDF/Pul-i Charkhi. As Lt. Col. Khan himself acknowledged, it is clear under the

2  Afghan Constitution that all people have a right to a lawyer from the moment of arrest. I do not believe

3  that this right has been provided to the Bagram detainees whether they were detained at Pul-i Charkhi or

4  Bagram Airbase. The Afghan Constitution makes no exceptions to this rule for anyone; nor does any

5  written law or order that I have seen.

6      22.    ILF-Afghanistan has handled terrorism-related cases where people have been arrested by

7  other ISAF forces or the Afghan National Army. Soon after their arrest, these individuals have been

8  turned over to local authorities where they have either been tried or released within, or close to, the time

9  periods provided by law, and these detainees have been given access to lawyers. This is not happening

10  in the case of the Bagram detainees at ANDF/Pul-i Charkhi. I believe the former Bagram detainees are

11  being treated differently from other detainees held by Afghan authorities because of the involvement of te

12  American military.

13      23.    Finally, even if I were permitted to access the detainees, I will encounter two significant

14  problems as a result of their detention at Bagram Airbase: First, the detainee will be mistrustful of me because

15  of the time period that he has been held in custody incommunicado and without a lawyer. ILF-Afghanistan

16  has handled other cases where prisoners have been subjected to psychological abuse, and these individuals

17  became extremely paranoid and mistrustful of everyone who visited them, making effective representation

18  extremely difficult. Second, given the substantial delays in prosecuting these detainees, it will be difficult for

19  me to conduct an effective independent investigation. Witnesses' memories will have lapsed due to the

20  passage of time, and evidence -- if it ever existed -- will be difficult to verify.

      I declare that the foregoing information is true and correct.

21

22  Executed in Kabul, Afghanistan, on this 31 day of July, 2007
   On this 9th day of Asad, 1386 (Afghan Calendar)

23                                                  /S/
                                           Mr. Ahadullah Azimi

24  Witnessed:          /S/
                 Ms. Angela Marie Krueger

25

26                     /S/
                 Dr. Zeerak Yousofi

27

28      fear of the loss of evidential facts.