UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**RUZATULLAH,** *et al.***,**       )
                                    )
       **Petitioners,**  )
                                    )
    **v.**                  )   Civ. Action No. 06-CV-01707 (GK)
                                    )
**RICHARD GATES,** *et al.,*        )
                                    )
                                    )
       **Respondents.**  )
_____)

### MOTION FOR AN ORDER REQUIRING RESPONDENTS TO PROVIDE 30-DAYS' ADVANCE NOTICE OF ANY PROPOSED <u>TRANSFER OF PETITIONER ROHULLAH FROM BAGRAM</u>

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1651, Petitioner Haji Rohullah, through his next friend, respectfully moves this Court for an injunction requiring respondents to provide counsel for petitioners and the Court with 30-days' advance notice of any intended transfer or release of Petitioner Rohullah from the United States detention facility located at Bagram, Afghanistan ("Bagram") where he is currently incarcerated. Further, to the extent that respondents challenge any of the facts upon which this Motion is based, petitioners respectfully ask the Court to order expedited discovery in order to provide petitioners with a full and fair opportunity to demonstrate Petitioner Rohullah's entitlement to the requested injunctive relief.

### <u>FACTS</u>

Petitioners Ruzatullah and Rohullah commenced this proceeding in November 2006 to obtain habeas corpus relief in connection with their detention by the United States

government and designation as "enemy combatants." Petitioners are Afghan citizens who were seized at their homes by the U.S. military and incarcerated at Bagram Air Force Base. Neither petitioner has been charged with any crime or informed of any charges against him. Petitioner Rohullah, who is the moving party here, has been held *incommunicado* for approximately one year at Bagram.

On or about June 19, 2007, Petitioner Ruzatullah was transferred, after over two and one-half years at Bagram, to the purported custody of the Afghan Government. According to respondents, through this transfer, they relinquished "all legal and physical custody of Ruzatullah," thereby depriving this Court of jurisdiction over Ruzatullah's petition. *See* Respondents' Supplement to Motion to Dismiss ("Supp. Mot.") at ¶ 3. Petitioner Ruzatullah is challenging this assertion.

Petitioner Ruzatullah is being held in the national security wing of the notorious Policharky Prison outside of Kabul, Afghanistan. *See* Petitioner's Ruzatullah's Opposition to Respondents' Supplemental Motion to Dismiss ("Supp. Opp.") at 2. As discussed in detail in petitioner Ruzatullah's submission, this detention facility is under the control of the U.S. military. *Id*. at 5. At least 56 detainees have been transferred from Bagram to Policharky since the national security wing opened in April of this year. *Id.* at 6; Declaration of Ahadullah Azimi (July 31, 2007) ("Azimi Decl.") (attached as Ex. 1).

In light of the recent transfer of Petitioner Ruzatullah and others, there can be no doubt that Petitioner Rohullah is at significant risk of being transferred to Policharky Prison and the nominal custody of the Afghan government. Respondents are also likely to repeat their contention — this time with regard to Petitioner Rohullah — that the Court no longer has jurisdiction to over his claims. Although this contention is without legal basis,

if Rohullah is transferred to Policharky, respondents will surely claim that he is beyond the reach of this Court.

## ARGUMENT

Under the circumstances presented here, the Court has ample authority to grant the modest relief requested. Petitioners ask that this Court enter a preliminary injunction barring respondents from transferring Petitioner Rohullah without providing 30 days prior notice to the Court and his counsel. Such an order would serve the most fundamental purpose of injunctive relief: the preservation of the status quo pending a final determination of the merits of this action. *See* 13 James Wm Moore, *Moore's Federal Practice 3d*, § 65.20 (2007).

The Court must consider four factors in deciding whether to grant injunctive relief: whether (i) petitioner will suffer irreparable harm if the requested relief is denied; (ii) petitioner has a substantial likelihood of success on the merits; (iii) the requested relief would substantially harm the opposing party; and (iv) granting the requested relief would further the public interest. *Al-Fayed v. CIA*, 254 F.3d 300, 303 (D.C. Cir. 2001). "These factors interrelate on a sliding scale and must be balanced against each other." *Serono Lab v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998). As discussed below, the balance of these factors strongly favors granting petitioners' request for notice prior to transfer of Petitioner Rohullah from Bagram.

**I.   Petitioner Rohullah Will Suffer Irreparable Harm if He is Transferred Without Notice or an Opportunity to be Heard**

Potential injury is the primary consideration in awarding injunctive relief. *CityFed Fin. Co. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). The potential harm to Petitioner Rohullah if he is transferred without notice is twofold: <u>First</u>, as the

respondents have argued with respect to Petitioner Ruzatullah, there is the potential that Rohullah might lose his right to review in this Court. Second, Petitioner Ruzatullah may be tortured or abused if transferred to the custody of the Afghan government. These potential harms are neither remote nor speculative. *See Milk Indus. Found. v. Glickman*, 949 F. Supp. 882, 897 (D.D.C. 1996). Consequently, this factor supports petitioners' request for injunctive relief.

    A. Petitioner Ruzatullah Faces the Threat of Irreparable Harm Based on the Potential Loss of his Habeas Claims.

As noted above, respondents purport to have transferred Petitioner Ruzatullah to the custody and control of the Afghan government. Although Ruzatullah is being held at the U.S. run "national defense" detention wing of Policharky prison, respondents claim that because of this transfer his habeas petition is moot and the Court lacks jurisdiction to hear his claims. Respondents will undoubtedly make the same arguments if Rohullah is transferred.

Petitioners are confident that a nominal transfer to the Afghan government under these circumstances does not alter the jurisdictional posture of this matter. However, in a parallel case involving the potential transfer of a Guantánamo detainee, this Court recently noted that "it is unclear at this point whether transferring [the detainee] would strip this Court of jurisdiction." *Al Marri v. Bush*, No. 04-2035, 2005 U.S. Dist. LEXIS 6259 at *13 (D.D.C. April 4, 2005). Consequently, the Court concluded that the detainee "faces the threat of irreparable harm based on the potential elimination of his habeas claims." *Id*. Petitioner Rohullah faces the very same threat.[1]

---

[1] Although respondents have challenged the petition on jurisdictional grounds, this Court has jurisdiction to determine its own habeas jurisdiction. *See Rasul v. Bush*, 542 U.S. 466 (2004); *Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006). The All Writs Act confers authority on the Court to issue orders to protect that jurisdiction

Moreover, if Rohullah loses his right to review in this Court, it is unlikely that there is *any* court that could evaluate the legality of his detention. Petitioners understand that the cases of former Bagram detainees held at Policharky were initially intended to fall under the jurisdiction of the Afghan National Security Court ("NSC"), which also tried suspected Taliban and other detainees accused of terrorism related offenses. Azimi Decl. at ¶ 17. The NSC was, however, recently dissolved by the Afghan government. *Id.* at ¶ 18. It is not clear that there is any other Afghan court with authority over these prisoners. *Id*. at ¶ 19. Thus, there does not appear to be any mechanism for review of Petitioner Rohullah's detention if he transferred to Afghan custody. The possibility of continued incarceration without access to legal process would also irreparably harm Rohoullah. *See Abdah v. Bush*, No. 04-1254, 2005 U.S. Dist. Lexis 4144 at *8 (Collyer, J.).

    B. <u>Petitioner Rohoullah Faces the Substantial Threat of Torture.</u>

Second, while respondents will undoubtedly deny that the Government of Afghanistan routinely engages in torture and abuse, such a position is indefensible given the views of experts in the human rights field, the extensive data reported in the media and reports issued by the U.S. Government itself. *See, e.g.*, Amnesty International, Afghanistan Human Rights Report 3 (2004) (attached as Ex. 2) (noting that "the criminal justice system remained ineffective," that "prison conditions were poor" and "torture and arbitrary detention were commonly used by police to extract confessions"). In the 2004 U.S. Department of State Country Report on Human Rights Practices for Afghanistan, the Government reports that "there were instances where local security forces and police

---

from being divested. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002) (while not conferring any new jurisdiction, the Act confers power on a court to do that which is necessary to preserve the jurisdiction otherwise conferred).

committed extrajudicial killings, and officials used torture in prisons. . . . prolonged pretrial detention and poor prison conditions led to deteriorating health conditions and death of some prisoners." (Attached as Ex. 3). The Report laid out a number of disturbing details, and government-sanctioned torture was explicitly acknowledged. *See Id*. at 2-3 (noting reports that some local police authorities routinely employed torture on detainees, and that prisoners were kept in unsanitary conditions in collective cells, unsheltered from severe winter conditions, and were beaten, tortured and denied adequate food). Petitioner Rohullah faces the possibility of transfer to the custody of a government that tortures and abuses its prisoners and, consequently, he is likely to be irreparably harmed if the requested relief is not granted.

## II.     Petitioner Rohullah Has a Substantial Likelihood of Success on the Merits.

Petitioners' underlying habeas petition is meritorious. As set forth in petitioner's opposition to respondents' motion to dismiss, Petitioner Rohullah has properly invoked the jurisdiction of this Court and is entitled to habeas relief under the relevant Supreme Court precedent including *Rasul v. Bush*, 542 U.S. 466 (2004), *Hamdi v. Rumsfeld*, 542, U.S. 507 (2004) and *Hamdan v. Rumsfeld*, 126 S. Ct. 2749, 2772 (2006).[2] *See generally*, Petitioners' Reply and Opposition to Respondents' Motion to Dismiss.

Although respondents may dispute the merits of the petition, it is not necessary for the Court to weigh the precise chances of its success on the merits to award the relief requested by Petitioner Rohullah. As set forth above, the Court is required to evaluate the factors relevant to an injunction on a sliding scale. Where, as here, petitioners raise

---

[2]  During the briefing of Respondents' Motion to Dismiss, the Court of Appeals issued its decision in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007). Prior to the filing of Respondents' reply brief, the Supreme Court denied *certiorari*. 127 S. Ct. 1478 (2007). Respondents' argued that Boumediene was "now the settled law of this Circuit." On June 27, 2007, the Supreme Court reversed its position, vacating it prior denial and granting certiorari. 127 S. Ct. 3067 (2007). Thus, the current posture of *Boumediene* plainly undercuts Respondents' position that it is destined to remain the law in this Circuit.

questions "going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberative investigation," the Court should avoid "exaggeratedly refined analysis of the merits at an early stage in the litigation." *Wash. Metro. Area Transit Comm'n v. Holiday Tours*, 559 F.2d 841, 844 (D.C. Cir. 1977). This principle has particular force where, as here, the movant seeks only an opportunity to maintain the status quo pending a final determination of the merits. *Id.*; *See also Carabillo v. ULLICO Inc. Pension Plan and Trust*, 355 F. Supp. 2d 49, 53 (D.D.C. 2004). Given the gravity of the rights and interests at stake, it is not necessary for Petitioners to show "a mathematical probability of success." *Holiday Tours*, 559 F.2d at 844. Petitioners' claims raise "fair ground for litigation" and support the issuance of injunctive relief. That is sufficient to justify an injunction that supports the status quo in this case. *Id.*

### III.    The Requested Relief Will Not Harm Respondents.

In cases where Guantánamo detainees have requested similar relief, this Court has held that there is *no*

> "injury whatsoever that the Government would suffer from granting the requested preliminary injunction. Petitioner requests only 30 days notice of transfer – a narrow and discrete request that would impose no burden on the Government."

*Al-Marri*, 2005 U.S. Dist. LEXIS 6259 at *18. Petitioner Rohullah seeks exactly the same relief here. As this Court has recognized, this relief imposes no burden whatsoever on the respondents. Thus, this factor also weighs in favor of granting petitioners' request for injunctive relief.

7

IV.     **Public Policy Unequivocally Favors the Granting of Petitioner's Request.**

The public has a strong interest in protecting the rights of prisoners held by the U.S. government. It also has a strong interest in ensuring that such challenges are heard. This Court has previously found that, "the public interest undeniably is served by ensuring that [Guantánamo detainees'] constitutional rights can be adjudicated in an appropriate manner." *Al-Marri,* 2005 U.S. Dist. LEXIS 6259 at * 20-21.  The fact that Petitioner Rohullah is being held at Bagram rather than Guantánamo does not change this analysis. The public interest is best served by entering the requested relief.

WHEREFORE, for the reasons stated above, Petitioner Rohullah respectfully requests that the Court enter an injunction requiring respondents to provide counsel for petitioners and the Court with 30-days' advance notice of any intended removal of Petitioners Rohullah from the United States detention facility at Bagram.

Respectfully submitted,

 /s/ A. Katherine Toomey_____        /s/ Tina Foster_____
Eric L. Lewis (#394643)                Tina Foster
Dwight P. Bostwick (#427758)           International Justice Network
A.  Katherine Toomey (# 426658)        P.O. Box 610119
Baach, Robinson & Lewis PLLC           Bayside, NY 11361-0119
1201 F Street, NW, Suite 500           Tel. +1 917 442 9580
Washington, DC 20004                   Fax. +1 917 591 3353
Tel: (202) 833-8900
Fax: (202) 466-5738


Dated: August 10, 2007