IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RUZATULLAH, *et al.*, ) <br> ) <br> Petitioners, ) <br> ) <br> v. ) <br> ) <br> DONALD RUMSFELD, ) <br> Secretary, United States Department of ) <br> Defense, *et al.,* ) <br> ) <br> Respondents. ) <br> ) | Civil Action No. 06-CV-01707 (GK) |

**RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION FOR
AN ORDER REQUIRING RESPONDENTS TO PROVIDE
30 DAYS' ADVANCE NOTICE OF ANY PROPOSED
TRANSFER OF PETITIONER ROHULLAH FROM BAGRAM**

Petitioner Haji Rohullah, a citizen of Afghanistan detained by the United States at a U.S. military base in Bagram, Afghanistan ("Bagram"), seeks an order requiring respondents to provide thirty (30) days' notice to the Court and petitioner's counsel before transferring petitioner from Bagram. Petitioner speculates that if he is transferred to the Government of Afghanistan, he might be tortured or abused. Thus the only purpose of the requested advance notice is to allow petitioner to contest a proposed transfer.

The petitioner's motion should be denied because this Court has no power to grant the requested relief. As respondents have already demonstrated in their Motion to Dismiss the Second Amended Petition (dkt # 15), this Court lacks subject matter jurisdiction over cases such as petitioner's. Under settled caselaw, this Court would not have had jurisdiction over a habeas case brought by an alien enemy combatant held at Bagram even before recent legislative developments. Further, the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366,

and the D.C. Circuit's decision in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *cert. granted*, 127 S. Ct. 3076 (June 29, 2007) (No. 06-1195), removes any doubt about this Court's lack of jurisdiction. *Boumediene* is the binding law of this Circuit and precludes a grant of petitioner's motion now, notwithstanding the Supreme Court's decision to review it. Indeed, since the Supreme Court granted *certiorari* in *Boumediene*, the D.C. Circuit has repeatedly denied similar injunctive relief based on the Military Commissions Act and D.C. Circuit precedent. This Court has no power to act otherwise.

Even beyond the jurisdictional bar, a balancing of harms tips against issuance of the "extraordinary and drastic remedy" of an injunction barring the Executive from acting in spheres in which it has been vested by the Constitution to act. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). In effect, petitioner is asking this Court to control the transfer or repatriation of an alien enemy combatant during an ongoing, global armed conflict, and to interfere directly with the Executive's conduct of war-making and foreign policy. The harm that would flow from the violation of separation of powers would be significant. By placing conditions on the Government's transfer of Afghan citizens detained on Afghan soil to the Government of Afghanistan, the Court would insert itself into the most sensitive of diplomatic matters and undermine the Government's ability to interact effectively with a foreign government. This is particularly true when the United States has an existing military presence in Afghanistan (as part of its partnership with the Afghans to establish security, deter the re-emergency of terrorism, and enhance the sovereignty of Afghanistan), and has on-going diplomatic arrangements with the Government of Afghanistan regarding its presence there, including arrangements regarding the transfer of Afghan citizens detained by the United States. Moreover, the injunction would undermine the President's constitutional authority as Commander-in-Chief and compromise the

United States' compelling interests in being able to repatriate or transfer detainees held in a zone of active hostility when continued detention by the United States is no longer a military necessity or appropriate.

## BACKGROUND

On October 2, 2006, a habeas petition was filed on behalf of petitioners Ruzatullah and Rohullah, both citizens of Afghanistan, challenging the validity of their detention by the United States at Bagram.  The United States had determined both petitioners to be enemy combatants and was detaining them as such.  *See* Declaration of Colonel James W. Gray, ¶ 5 (dkt #15).  The habeas petition was subsequently amended twice, and briefing on respondents' Motion to Dismiss the Second Amended Petition was complete on April 20, 2007.

On July 7, 2007, respondents filed a supplement to their motion to dismiss, informing the Court that on or about June 19, 2007, the United States transferred Ruzatullah to the Government of Afghanistan, relinquishing all legal and physical custody of Ruzatullah (dkt #21).  The respondents also argue that the habeas petition with respect to Ruzatullah is moot.  Ruzatullah has opposed respondents' supplemental motion to dismiss, contending that he has been transferred to the Afghan National Detention Center in Policharky, Afghanistan under the United States' constructive custody (dkt #25).  Respondents' reply brief with respect to the mootness argument is now due September 5, 2007.

Petitioner Rohullah has asked this Court to enter a preliminary injunction barring the Government from transferring him without providing 30 days' prior notice to the Court and his counsel.  That motion should be denied.

**ARGUMENT**

I.   **THE COURT LACKS JURISDICTION TO GRANT THE PRESENT MOTION**

Petitioner's motion for an injunction conditioning his transfer on prior notice should be denied because this Court has no jurisdiction to enter such an injunction. As already demonstrated in respondents' motion to dismiss, even before the enactment of the MCA, the habeas statute had never been interpreted to apply to aliens held in foreign territories by the United States, except under the unique circumstances relating to the United States' control over the Guantanamo Bay Naval Base. *See* Mot. to Dismiss 2d Amended Pet. at 11-12. As respondents have also shown, the habeas statute simply does not give federal district courts the power to review habeas claims by foreign nationals captured during military operations overseas and held in foreign lands by the U.S. military; in other words, the Supreme Court's reading of the habeas statute to extend its reach to detainees held by the United States at Guantanamo Bay as articulated in *Rasul v. Bush*, 542 U.S. 466 (2004), does not similarly apply to Afghanistan. *See id.*

Erasing any doubt that might exist about the issue, Congress enacted the Military Commissions Act on October 17, 2006, making clear that "[n]o court, justice, or judge shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination," except for an exclusive review mechanism in the Court of Appeals created under the Detainee Treatment Act of 2005 ("DTA"), Pub. L. No. 109-148, 119 Stat. 2680. *See* MCA § 7(a).

The D.C. Circuit recognized as much when it held in *Boumediene*, a case involving Guantanamo detainees, that the MCA plainly divests federal courts of jurisdiction to review

petitions for writs of habeas corpus filed by aliens captured abroad and detained as enemy combatants in an overseas military base. *See* 476 F.3d 981, 986-88 & n.1; *id.* at 994. The Court of Appeals also held that the MCA's jurisdiction-limiting provision did not violate the Suspension Clause because alien enemy combatants, who have no significant voluntary connections with this country and who are detained abroad, cannot invoke protections under the Constitution. *Id.* at 988-94.

Thus, under the MCA, particularly as understood and applied in *Boumediene*, it is clear that this Court has no power to require the Government to provide a 30 days' notice prior to any transfer of petitioner Rohullah. In a similar situation involving a Guantanamo detainee seeking an injunction to bar his transfer from Guantanamo, the D.C. Circuit, citing *Boumediene*, denied the detainee's emergency motion and ordered that "the case be dismissed for lack of subject matter jurisdiction." *See Zalita v. Bush*, No. 07-5129 (Apr. 25, 2007) (copy attached as Exhibit 1);[1] *see also Khalifh v. Gates*, No. 07-1215 (D.C. Cir. June 22, 2007) (in denying motion seeking an injunction barring transfer of a DTA petitioner under MCA section 7, court noted "[t]his court lacks jurisdiction to grant the requested relief").

To be sure, the Supreme Court has decided to review *Boumediene*. *See Boumediene v. Bush*, 127 S. Ct. 3078 (June 29, 2007). That decision, however, does not give this Court jurisdiction to act now. Under settled rules governing the precedential effect of appellate rulings, *Boumediene* remains the binding law of this Circuit. *See Maxwell v. Snow*, 409 F.3d 354, 358 (D.C. Cir. 2005) ("this Court is bound to follow circuit precedent until it is overruled either by an *en banc* court or the Supreme Court"); *Chambers v. United States*, 22 F.3d 939, 942 n.3 (9th Cir.

---

[1] The Supreme Court later similarly denied the detainee's motion for the same relief. *Zalita v. Bush*, 06A1005 (May 1, 2007) (copy attached as Exhibit 2).

1994) ("In this circuit, once a published opinion is filed, it becomes the law of the circuit until withdrawn or reversed by the Supreme Court or an en banc court."), *vacated on other grounds*, 47 F.3d 1015 (1995). *See also Vo Van Chau v. U.S. Dep't of State*, 891 F. Supp. 650, 654 (D.D.C. 1995) (district court is bound by principle of *stare decisis* to abide by a Court of Appeals decision even in absence of effective mandate). Activity in the Supreme Court short of a reversal does not diminish the binding nature of the D.C. Circuit's *Boumediene* decision. As stated by Judge Henderson:

> Nor is it relevant that another circuit has ruled differently on the jurisdictional question or that the United States Supreme Court has granted *certiorari* on the question. Unless and until [the D.C. Circuit's earlier opinion] is reversed or overruled by the United States Supreme Court or by this court *en banc*, [the earlier opinion] remains the law of this circuit and no amount of hardship the appellees may suffer as a consequence can confer jurisdiction on the district court.

*Ayuda, Inc. v. Thornburgh*, 919 F.2d 153, 154 (D.C. Cir. 1990) (Henderson, J., concurring).

For a separate reason besides the binding nature of the D.C. Circuit's *Boumediene* ruling, the Supreme Court's decision to review *Boumediene* has no significance with regard to the jurisdictional bar to petitioner's requested relief. Even if the Supreme Court were to reverse the Court of Appeals' holding that section 7 of the MCA eliminates federal jurisdiction over petitions for habeas corpus by alien enemy combatants, another aspect of the MCA would nevertheless preclude this Court from granting an order enjoining a transfer of petitioner from Bagram absent prior notice. A holding by the Supreme Court in *Boumediene* that the MCA's removal of federal court jurisdiction over alien enemy combatants' habeas petitions is unconstitutional would not affect the independent provision of the MCA which expressly bars any claims by such aliens regarding, *inter alia*, transfer. *Compare* 28 U.S.C. § 2241(e)(1) (added

by MCA 7(a)) ("No court, justice, or judge shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.") *with* 28 U.S.C. § 2241(e)(2) (added by MCA 7(a)) ("[with the exception of Detainee Treatment Act proceedings initiated in the Court of Appeals,] no court, justice, or judge shall have jurisdiction to hear or consider *any other action* against the United States or its agents relating to any aspect of the detention, *transfer*, treatment, trial, or conditions of confinement [of alien enemy combatant detained by the United States]") (emphasis added). Separate from the question of whether petitioner's habeas case could proceed, therefore, the MCA expressly prohibits this Court from granting an injunction in connection with a transfer of petitioner. Thus, while affirmance of *Boumediene* would constitute validation of even the aspect of the MCA under which district courts lack jurisdiction over habeas claims asserted by alien enemy combatants, reversal of that decision would not constitute a holding as to the legitimacy or applicability of the MCA provision denying district court jurisdiction over those detainees' transfer claims.

That this Court has no jurisdiction to grant the relief sought is evident because even after the Supreme Court granted *certiorari* in *Boumediene*, the D.C. Circuit has consistently denied on jurisdictional grounds motions by detainees seeking advance notice of transfer or an order barring transfer, both in DTA and habeas cases. *See Hamily v. Gates*, No. 07-1127 (D.C. Cir. July 16, 2007) (denying emergency motion for an order requiring the Government to provide 30 days' advance notice of any intended removal of DTA petitioner because the court "lacks jurisdiction to grant the requested relief" under D.C. Circuit precedent) (attached as Exhibit 3) (petition for

rehearing pending); *Mingazov v. Gates*, 07-1095 (D.C. Cir. Aug. 10, 2007) (denying DTA petitioner's motion for 30-days' notice of transfer because "[t]his court lacks jurisdiction to grant the requested relief") (attached as Exhibit 4); *Belbacha v. Bush*, No. 07-5258 (D.C. Cir. Aug. 2, 2007) (denying emergency motion to enjoin the Government from transferring habeas petitioner from Guantanamo and for a stay pending appeal; citing *Boumediene* and *Maxwell v. Snow*) (attached as Exhibit 5). Indeed, in *Belbacha*, the Supreme Court similarly denied petitioner's motion for an emergency stay of a transfer. *Belbacha v. Bush*, No. 07A98 (U.S. Aug. 10, 2007) (attached as Exhibit 6).

      Petitioner argues that the All Writs Act, 28 U.S.C. § 1651, confers on this Court power to grant the requested injunctive relief, which, according to petitioner, would merely preserve the status quo. *See* Pet. Mot. at 4-5 n.4. Petitioner is wrong. The All Writs Act provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). As the Supreme Court has explained, the Act "confines the power of the [court] to issuing process 'in aid of' its existing statutory jurisdiction; the Act does not enlarge that jurisdiction." *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999); *accord In re Tennant*, 359 F.3d 523, 527 (D.C. Cir. 2004). When an issue that is the subject of a request for a writ is "beyond the [court's] jurisdiction to review . . . [it is] beyond the 'aid' of the All Writs Act in reviewing it." *Goldsmith*, 526 U.S. at 535. Indeed, the D.C. Circuit has rejected the All Writs Act as a basis for relief similar to what petitioner requests here. *See Zalita*, No. 07-5129 (D.C. Cir. Apr. 25, 2007) (rejecting petitioner's reliance on the All Writs Act and dismissing challenge to his transfer for lack of jurisdiction); *cf. Khadr v. Gates*, No. 07-1156 (D.C. Cir. May 30, 2007) (rejecting petitioner's reliance on the All Writs Act as providing jurisdiction to stay military

commission proceedings, given the MCA's treatment of federal jurisdiction over military commission proceedings).

Petitioner's motion should be denied for lack of jurisdiction.

### II.    A GRANT OF PETITIONER'S MOTION FOR INJUNCTIVE RELIEF WOULD VIOLATE THE SEPARATION OF POWERS AND, IN ANY EVENT, IS UNWARRANTED UNDER THE TRADITIONAL BALANCING OF FACTORS

Apart from the jurisdictional bar, the balancing of harms that must be done in the context of a motion for preliminary relief decidedly tips in favor of denying petitioner's motion.  It is well-established that a request for preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).  To prevail on a request for a preliminary injunction, a movant "must 'demonstrate 1) a substantial likelihood of success on the merits, 2) that [he] would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction.'"  *See Katz v. Georgetown Univ.*, 246 F.3d 685, 687-88 (D.C. Cir. 2001) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)).  The irreparable harm that must be shown to justify a preliminary injunction "must be both certain and great; it must be actual and not theoretical."  *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).  Petitioner's motion fails to make the showing required to justify the grant of injunctive relief.

Here, petitioner has no likelihood of success on the merits because, as discussed above

and in respondents' motion to dismiss, this Court has no jurisdiction to review the habeas petition. Indeed, petitioner's chance of success is not necessarily increased even if the Supreme Court were to reverse *Boumediene*. *Boumediene* involves only Guantanamo Bay detainees who, under the pre-MCA statutory scheme, were found in *Rasul v. Bush* to have habeas rights because of the unique status of the Guantanamo Bay Naval Base. Bagram detainees, in contrast, never had any habeas rights under either the habeas statute or the Constitution. *See* Resp. Mot. to Dismiss 2d Amended Pet. at 11-22. And even if the Supreme Court were to strike down the provision of the MCA at issue in *Boumediene* which relates to habeas claims, the present motion would remain jurisdictionally deficient because of the provision of the MCA under which federal courts lack authority to consider transfer-related matters.

Further, petitioner's alleged potential irreparable harm is speculative at best, and therefore insufficient to warrant preliminary relief. *See Wisconsin Gas Co.*, 758 F.2d at 674 (the irreparable harm that must be shown to justify a preliminary injunction "must be both certain and great; it must be actual and not theoretical"). Citing a 2004 State Department report issued shortly after Afghanistan ratified a new constitution and conducted the country's first presidential election, petitioner argues that Afghanistan has a poor human rights record, which implicates a whole host of other problems, such as poor prison conditions and torture by the local police. Petitioner also expresses concern that the Afghan National Security Court, which he believes had jurisdiction to try former Bagram detainees held at Policharky, allegedly has been dissolved recently. According to petitioner, "it is not clear that there is any other Afghan court with authority over these prisoners." Pet. Mot. at 5. Petitioner thus concludes that "there does not appear to be any mechanism for review of [his] detention if he [is] transferred to Afghan

custody." *Id.*

These speculative harms, however, cannot justify the grant of a preliminary injunction. As the respondents explained in their motion to dismiss, in order to facilitate the transfer of Afghan detainees at Bagram to the Government of Afghanistan, the United States funded the renovation of the Afghan National Detention Center in Policharky, and is also providing other aid to the Government of Afghanistan regarding the operation of that prison to ensure that it would meet international standards. *See* Declaration of Colonel Rose M. Miller ¶ 8 (dkt #6). Petitioner's argument that if he is transferred to the Afghan government, he likely would be tortured or be subject to unacceptable conditions of confinement is, therefore, entirely speculative.

As for petitioner's concern about the adequacy of the Afghan justice system to review his detention (in the event he is transferred to the Afghan government and if the Afghan government decides to continue to detain him), that is "a matter beyond the purview of this court." *Holmes v. Laird*, 459 F.2d 1211, 1215 (D.C. Cir. 1972). In *Holmes*, U.S. citizen service members sued to prevent the Government from transferring them to West German authorities to serve sentences pursuant to criminal convictions in that country, based on their conduct while stationed there. Despite the U.S. citizenship of those service members, the D.C. Circuit refused to examine the fairness of their treatment by the foreign government or to enjoin the transfer because "the contemplated surrender of appellants to the Federal Republic of Germany is a matter beyond the purview of this court." 459 F.2d at 1225.

Here, petitioner is a citizen of Afghanistan, who was captured in Afghanistan and has been detained on Afghan soil. *See* Gray Decl. ¶ 5. His potential transfer to his own government,

11

whether for release or for detention and prosecution under Afghan law, clearly is beyond the purview of this Court. *See Worldwide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1164-65 (D.C. Cir. 2002) ("The act of state doctrine precludes the courts of this country from inquiring into the validity of the public acts of a recognized foreign sovereign power committed within its own territory.") (internal quotation marks and citation omitted). *Cf., e.g.*, *Matter of Requested Extradition of Smyth*, 61 F.3d 711, 714 (9th Cir. 1995) (discussing "rule of non-inquiry" which has to do with "the notion that courts are ill-equipped as institutions and ill-advised as a matter of separation of powers and foreign relations policy to make inquiries into and pronouncements about the workings of foreign countries' justice systems"). This is particularly so because such transfers implicate not only the Executive's conduct in foreign relations, but also the additional, weighty concern of the Executive's war-making powers. And "[w]ithout doubt, our Constitution recognizes that core strategic matters of war-making belong in the hands of those who are best positioned and most politically accountable for making them." *See Hamdi v. Rumsfeld*, 542 U.S. 507, 531 (2004) (plurality opinion). There is also "no doubt that decision-making in the fields of foreign policy and national security is textually committed to the political branches of the government." *Schneider*, 412 F.3d at 194. *See also Joo v. Japan*, 413 F.3d 45, 52-53 (D.C. Cir. 2005) (adjudication that "would undo" Executive's judgment in foreign policy "would be imprudent to a degree beyond our power"); *Schneider v. Kissinger*, 412 F.3d 190, 197 (D.C. Cir. 2005) ("pass[ing] judgment on the policy-based decision of the executive" in foreign policy "is not the stuff of adjudication").

The potential harm to the public and the United States if an order is entered to prohibit the Government from transferring a Bagram detainee absent 30 days' advance notice is sufficient

to tip the scale against issuance of the injunction. As respondents have discussed in their motion to dismiss, the United States' presence in Afghanistan was necessitated by its ongoing war against al Qaeda, the Taliban and their affiliates and supporters. *See* Miller Decl. ¶ 4. The mission of the U.S. military in Afghanistan is to join with multinational forces and the Afghans to "establish security, deter the re-emergency of terrorism, and enhance the sovereignty of Afghanistan." *Id.* ¶ 2. While the United States has detained some Afghan citizens at Bagram so as to prevent those enemy combatants from returning to the battlefield, *see id.* ¶ 8, the United States has no interest in detaining them indefinitely. Thus, as the respondents noted in their motion to dismiss, the United States has transferred some Afghan detainees at Bagram to the Government of Afghanistan pursuant to a national reconciliation program, which is designed to allow combatants who are ready to put down their weapons to join in their country's progress by living peaceful and productive lives. Mot. to Dismiss 2d Amended Pet. at 7. Those detainees are returned by the Government of Afghanistan to their village elders for reintegration into society. *Id.*

Moreover, pursuant to a diplomatic arrangement reached with the Government of Afghanistan, the United States expects to transfer a significant percentage of the Afghan detainees at Bagram to the Government of Afghanistan. *See id*. at 8. And, as noted before, pursuant to that arrangement, the United States funded the renovation of the Afghan National Detention Center and is providing other aid to the Government of Afghanistan regarding the operation of that prison, both to facilitate these transfers and to ensure that the detention facility would meet international standards. *See* Miller Decl. ¶ 8.

The harm stemming from an order conditioning the transfer of Afghan detainees at

Bagram is twofold.  First, the injunction would undermine the President's constitutional authority as Commander-in-Chief to capture individuals in armed conflict, detain them as enemy combatants, and upon determining that their release or transfer to another country is otherwise appropriate, to so transfer or release them.  *See Hamdi v. Rumsfeld*, 542 U.S. 507, 518 (2004) (plurality opinion) ("The capture and detention of lawful combatants and the capture, detention, and trial of unlawful combatants, by 'universal agreement and practice,' are 'important incident[s] of war.'") (quoting *Ex parte Quirin*, 317 U.S. 1, 28 (1942)); *Hamdan v. Rumsfeld*, 126 S. Ct. 2749, 2798 (2006) ("we do not today address, the Government's power to detain [Hamdan] for the duration of active hostilities"); Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (2001) (recognizing that President has "authority under the Constitution to take action to deter and prevent acts of international terrorism against the United States," and authorizing him "to use all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided" the September 11 attacks).

   Second, the injunction would infringe on the President's power to conduct foreign relations.  If the Court were to place conditions on repatriation or removal of Afghan citizens from Bagram, it would insert itself into the most sensitive of diplomatic matters and undermine the Government's ability to interact effectively with the Government of Afghanistan.  This is particularly true in light of the existing United States' military presence in Afghanistan and its diplomatic arrangements with the Government of Afghanistan, including any cooperative efforts in the military campaign to establish security, deter the re-emergence of terrorism, and enhance the sovereignty of Afghanistan.  At the very least, the very prospect of judicial review,

14

exemplified by an advance notice requirement, would undermine the ability of the Executive Branch to speak with one voice in its dealings with that country. *See Crosby v. National Foreign Trade Council*, 530 U.S. 363, 381 (2000) (expressing disapproval of acts that "compromise the very capacity of the President to speak for the nation with one voice in dealing with other governments"). An advance notice requirement, after all, would make the results of diplomatic dialogue between the Executive Branch and a foreign government regarding repatriations or transfers inherently contingent because the effective acquiescence of another Branch (*i.e.*, the Judiciary) would be required for the transfer or repatriation to be effected. This type of intrusion clearly would pose significant harm to the public interest. As one Judge of this Court has held:

> [T]here is a strong public interest against the judiciary needlessly intruding upon the foreign policy and war powers of the Executive on a deficient factual record. Where the conduct of the Executive conforms to law, there is simply no benefit – and quite a bit of detriment – to the public interest from the Court nonetheless assuming for itself the role of a guardian ad litem for the disposition of these detainees. *See People's Mojahedin Org. v. Dep't of State*, 182 F.3d 17, 23 (D.C. Cir. 1999) ("[I]t is beyond the judicial function for a court to review foreign policy decisions of the Executive Branch." ).

*Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 199 (D.D.C. 2005) (Bates, J.).

In sum, the Court lacks jurisdiction to grant the requested relief, and, in any event, petitioner has not satisfied the requirements for such relief.[2]

---

[2] Petitioner also argues that to the extent respondents challenge any of the facts upon which his motion is based, this Court should grant him expedited discovery to demonstrate his entitlement to the requested injunctive relief. *See* Pet. Mot. at 1. Respondents have introduced no new facts in their opposition, and in any event, as respondents discussed in their reply brief in support of motion to dismiss (dkt # 20) at 9-13, discovery is inappropriate in this proceeding.

**CONCLUSION**

For the foregoing reasons, this Court should deny petitioners' motion for an order requiring 30 days' advance notice of a transfer of the petitioner.

Dated: August 24, 2007

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

   /s/   Jean Lin
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR (D.C. Bar No. 347518)
JEAN LIN
JAMES LUH
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-3716
Fax:  (202) 616-8470

Attorneys for Respondents