UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **RUZATULLAH,** *et al.*, | ) </br> ) </br> ) |
| Petitioners, | ) </br> ) |
| v. | )    Civ. Action No. 06-CV-01707 (GK) </br> ) |
| **RICHARD GATES,** *et al.*, | ) </br> ) </br> ) |
| Respondents. | ) </br> ) |

### PETITIONER ROHULLAH'S REPLY IN SUPPORT
### OF HIS MOTION FOR 30-DAYS' ADVANCE NOTICE OF TRANSFER

Petitioner Rohullah has moved this Court for an order of modest scope. Specifically, petitioner has requested 30 days' notice prior to any transfer. This order (referred to herein as a "30-day order") is a form of relief that this Court has repeatedly granted in similar cases. *See Al-Marri v. Bush*, No. 04-2035, 2005 U.S. Dist. LEXIS 6259 (D.D.C. Apr. 4, 2005); *Al-Joudi v. Bush*, No. 05-301, 2005 U.S. Dist. LEXIS 6265 (D.D.C. Apr. 4, 2005); *Alhami v. Bush,* No. 05-359 (D.D.C. June 9, 2005); *Al-Adahi v. Bush*, No. 05-280 (D.D.C. Apr. 25, 2005). Contrary to respondents' arguments in their opposition, there is nothing in the Military Commissions Act or the D.C. Circuit's decision in *Boumediene v. Bush,* 476 F.3d 981 (D.C. Cir. 2007), *cert. granted* 127 S.Ct. 3078 (2007), that precludes the issuance of a 30-day order in this case. In fact, subsequent to issuing its decision in *Boumediene*, the D.C. Circuit has considered and declined to vacate 30-day orders issued by this Court, including the orders cited above. *Al Ginco v. Bush*, D.C. Cir. No. 06-5191, slip op. at 2 (June 7, 2007).

Dockets.Justia.com

## ARGUMENT

This Court currently has *sub judice* a motion to dismiss the petitions on jurisdictional grounds. In their motion to dismiss and supporting papers, respondents argued that this Court lacks jurisdiction under the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, *codified in relevant part at* 28 U.S.C. § 2241(e), and the D.C. Circuit's decision in *Boumediene*, to consider the instant petitions. In response, petitioners pointed out, *inter alia*, that respondents have not complied with the terms of the MCA with respect to their purported "determination" that petitioners are enemy combatants, and that the MCA accordingly does not affect this Court's jurisdiction. Because they have not been determined to be "properly detained" as required by the MCA, neither the MCA, nor the D.C. Circuit's decision in *Boumediene*, applies to petitioners. *See* Petitioners' Opposition to Motion to Dismiss ("Pet. Opp.") at 10-15. In addition, as petitioners noted in their opposition to the motion to dismiss, substantial facts relevant to this Court's jurisdictional inquiry are within the exclusive knowledge of respondents.[1] Accordingly, petitioners are entitled to discovery concerning respondents' purported "determinations" of their enemy combatant status.

As this brief summary demonstrates, there is a pending, substantive dispute between the parties concerning this Court's jurisdiction. Nevertheless, respondents' opposition to the motion for a 30-day order disregards this unresolved dispute and assumes their own conclusion -- that this Court will accept all of the jurisdictional arguments they made in their motion to dismiss and conclude it lacks jurisdiction to hear this matter. Respondents ignore the fact that these jurisdictional arguments have been contested by petitioners, that the Court has not yet ruled on these arguments, and that the purpose of the instant motion is merely to maintain the status quo

---

[1] Some of these facts have been elucidated in the various affidavits submitted by respondents. Petitioners have not had an opportunity to explore these facts through discovery. And of course other relevant facts remain unknown to petitioners and this Court.

2

to permit this Court to consider the pending motion. As such, granting the instant motion is within this Court's jurisdiction to consider its own jurisdiction, *see Rasul v. Bush*, 542 U.S. 466 (2004); *Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006), and within this Court's purview under the All Writs Act, 28 U.S.C. § 1651. Finally, respondents' argument that the requested order improperly interferes with executive functions is unavailing and has previously been rejected by this Court.

### A. The MCA Does Not Deprive This Court Of Jurisdiction To Issue The Requested Order.

Respondents' argument that the MCA stripped this Court of jurisdiction to consider Rohullah's motion substantially repeats the arguments respondents have made on the merits in this matter and assumes their correctness. In response, petitioner Rohullah respectfully refers this Court to his Opposition to the Motion to Dismiss. As set forth in that filing, Rohullah has not been properly determined to be an enemy combatant as required under the MCA. Accordingly, this Court does have jurisdiction over his petition. *See Maqaleh v. Gates,* No. 06-1669, slip op. at 3 (D.D.C. July 18, 2007) (Court retains authority to determine its jurisdiction because *Boumediene* does not definitively resolve jurisdictional issues in connection with Bagram detainee). At the least, this Court should exercise jurisdiction to permit discovery concerning whether Rohullah has been so determined, and the *status quo* should be maintained until that jurisdictional inquiry is resolved. In the absence of the relief requested herein, respondents can attempt to preclude adjudication of this critical issue by the expedient tactic of a sudden transfer.

Because the question of jurisdiction over Rohullah's petition has yet to be decided, this Court undoubtedly has power to grant the requested relief. Respondents' argument to the

3

contrary ignores the fact that this Court has jurisdiction to determine its jurisdiction over this matter. *See Rasul v. Bush*, 542 U.S. 466 (2004); *Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006); *U.S. Catholic Conf. v. Abortion Rights Mobilization*, 487 U.S. 72, 79 (1988) (court may issue process and orders, including discovery orders, necessary for "court to determine and rule upon its own jurisdiction"); *Ilan-Gat Engineers, Ltd. v. Antigua International Bank*, 659 F.2d 234, 239 (D.C. Cir. 1981) ("The court has power to compel discovery on jurisdictional issues").

In addition, the Court may act pursuant to the All Writs Act, 28 U.S.C. § 1651 to preserve its jurisdiction pending a disposition on the merits. *See SEC v. Vision Communs.*, 74 F.3d 287, 291 (D.C. 1996). An order providing notice to counsel for petitioners and the Court in advance of any planned transfer of Rohullah in no way enlarges the Court's jurisdiction – it merely helps to preserve the Court's ability to resolve this jurisdictional challenge. Consequently, the requested relief is undoubtedly within the Court's powers pursuant to the All Writs Act. *Envtl. Def. Fund v. EPA*, 485 F.2d 780, 784 n.2 (D.C. Cir. 1973).

**B. *Boumediene* Does Not Preclude The Relief Requested.**

Respondents also argue that the D.C. Circuit's decision in *Boumediene v. Bush* precludes entry of the requested order. In particular, respondents argue that: i) *Boumediene* is binding precedent and that this Court is obliged to follow it, despite the fact that the Supreme Court has granted a writ of *certiorari* in *Boumediene*; and ii) that *Boumediene* precludes exercise of jurisdiction with respect to the requested 30-day notice. Neither argument is correct.

The principal issue before this Court on the motion to dismiss is whether the MCA requires that the United States make "enemy combatant" determinations either through a Combatant Status Review Tribunal ("CSRT") or by "a competent tribunal." *See* Pet. Opp. at 14-

4

18, 20. *Boumediene* does not address, much less resolve, this issue.[2]  Thus, the holding in *Boumediene*, whether final or not and whether binding or not, is not dispositive here.[3]  But even if *Boumediene* did address the jurisdictional arguments presented in this case, *Boumediene* is not a final decision, even with respect to the parties to that case. Consequently, *Boumediene* does not bind this Court.

Respondents argue that the fact that the Supreme Court has granted *certiorari* in *Boumediene* does not affect its precedential value in this Circuit. Although a petition for writ of *certiorari* (and even the granting of such a petition), does not automatically stay the mandate, Fed. R. App. P. 41(d)(2)(A), *United States v. Microsoft Corp.*, 2001 U.S. App. LEXIS 18715 (D.C. Cir. Aug. 17, 2001),  respondents' argument fails to address the circumstance in which the Circuit affirmatively decides to stay its mandate "until the Supreme Court's final disposition" of

---

[2] As authority for their position that *Boumediene* deprives the Court of jurisdiction to grant the relief requested herein, respondents cite a handful D.C. Circuit and the Supreme Court orders which reject requests for 30-day orders and other similar relief. Respondents' Opposition ("Resp. Opp.") at 5, 7-9 & Exhibits 1-5.  These unpublished orders provide no factual background or legal analysis.  In addition, although the orders cited by respondents decline to issue such relief, as noted above, the D.C. Circuit has also recently upheld 30-day orders issued by this Court. *See Al Ginco v. Bush*, D.C. Cir. No. 06-5191 (June 7, 2007) (attached hereto as Exh. 1). Moreover, the orders cited by respondents are not controlling under the facts presented here. Although it is impossible to glean much from the bare orders relied on by respondents, petitioners understand that they each apply to detainees held at Guantanamo. Presumably, as mandated by the MCA, these detainees had CSRT hearings to determine their status and fall within the confines of *Boumediene.*  Petitioner Rohullah has not been afforded even the rudimentary CSRT process.  *See* Pet. Opp.  at 15.   Indeed, respondents tacitly concede that *Boumediene* is not controlling with respect to the instant motion in their argument that petitioner's likelihood of success on the merits is not necessarily increased by a potential reversal of *Boumediene*. Resp. Op. at 10.

This example illustrates the tension in respondents' arguments, as they seek to "have it both ways" in respect of *Boumediene.*  They strongly urge this Court to follow *Boumediene* in connection with the instant motion and argue that *Boumediene* mandates a rejection of Rohullah's motion.  At the same time, respondents argue that petitioner Rohullah is differently situated from the Guantanamo detainees and that any reversal of the *Boumediene* decision will not support Rohullah's position here. This Court should reject such disingenuity.  A decision reversing *Boumediene* could easily support petitioners' habeas petitions here. As Judge Bates of this Court recently noted "the Supreme Court could issue a broader decision  . . . . one whose reasoning applies not just to Guantanamo, but to Bagram and other locations as well." *Maqaleh v. Gates,* No. 06- 1669, slip op. at 2 (D.D.C. July 18, 2007). Certainly, there is no reason to presume, as respondents do, that the reasoning of the Supreme Court's upcoming decision in *Boumediene* necessarily will not apply to Bagram detainees.

[3] Equally, *Boumediene* does not address such other issues as whether petitioners should be entitled to take discovery concerning respondents' purported "determinations" of their enemy combatant status, and whether the United States exercises jurisdiction and control over Bagram equivalent to (or greater than) its control over Guantanamo.

5

a petition for writ of *certiorari*. Fed. R. App. P. 41(d)(2)(B). In such a case, the Circuit enters the stay precisely *in order to* affect the finality of its decision and its status as binding precedent. More importantly, however, respondents' argument ignores the most important question affecting whether this Court is bound by *Boumediene* – whether *Boumediene* is a final disposition (and therefore binding precedent)*,* given not only that the Supreme Court has granted the petition for writ of *certiorari*, but also that the D.C. Circuit has *expressly withdrawn* its mandate in the case*. Boumediene* is not a final disposition.

It is well-settled that an appellate decision is not final until the mandate is issued. *See* Fed. R. App. P. 41(c), 1998 advisory committee's note ("A court of appeals' judgment or order is not final until issuance of the mandate; at that time the parties' obligations become fixed."); *Alphin v. Henson*, 552 F.2d 1033, 1035 (4th Cir. 1977); *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 97-98 (3d Cir. 1988); *First Gibraltar Bank, FSB v. Morales*, 42 F.3d 897-98 (5th Cir. 1995); *United States v. Simmons*, 923 F.2d 934, 956 (2d Cir. 1991); *Charpentier v. Ortco Contrs.*, 480 F.3d 710, 713 (5th Cir. 2007); *Beardslee v. Brown,* 393 F.3d 899, 901 (9th Cir. 2004); *Heartland By-Products, Inc. v. United States*, 223 F. Supp. 2d 1317, 1332-33 (Ct. Int'l Trade 2002). Issuance of the mandate formally ends the case in the Court of Appeals and returns jurisdiction to the district court for proceedings consistent with the mandate. In the absence of a mandate (or upon recall), jurisdiction remains in the Court of Appeals, and its decision may be amended or rescinded. *Deering Milliken, Inc. v. Federal Trade Com.,* 647 F. 2d 1124, 1129 (D.C. Cir. 1978); *Wilson v. Ozmint*, 357 F.3d 461, 464 (4th Cir. 2004); *Charpentier,* 480 F.3d at 713 & n.10; 20A James Wm. Moore, *et al*., Moore's Federal Practice ¶ 341.12[3] at p. 341-48 (3d ed. 2007). Until the mandate issues, the decision is not binding, even between the parties to

the action. Fed. R. App. P. 41(c), 1998 advisory committee's note; *Charpentier*, 480 F.3d at 713; *Heartland By-Products,* 223 F. Supp. 2d at 1332-33.

*Boumediene* is not simply a case in which the mandate – for whatever reason – has not been issued.[4] In *Boumediene*, the mandate has been affirmatively recalled by the panel that issued it. *Boumediene v. Bush*, 2007 U.S. App. LEXIS 18077 (D.C. Cir. July 26, 2007). Recall of the mandate is only permitted in "exceptional circumstances." *Dilley v. Alexander*, 627 F.2d 407, 412 (D.C. Cir. 1980); *see also* 20A Moore's Federal Practice ¶ 341.15[2] at p. 341-13; *Fine v. Bellefonte Underwriters, Ins. Co.*, 758 F.2d 50, 53 (2d Cir. 1985); *Alphin*, 552 F.2d at 1035. In a habeas case like *Boumediene*, such circumstances must rise to the level of "a miscarriage of justice." *Calderon v. Thompson*, 523 U.S. 538, 550, 558 (1998).

Recalling the mandate deprives a previously final decision of its finality, and thus upsets the expectations of the parties and the interests of the judicial system. *Calderon*, 523 U.S. at 550, 557; *see also Sargent v. Columbia Forest Prods.*, 75 F.3d 86, 89 (2d Cir. 1996). It is used *only* for the purposes of modifying or rescinding a previously issued judgment. Sometimes that modification is a minor clerical error. *E.g., N. Cal. Power Agency v. NRC*, 393 F.3d 223, 224-25 (D.C. Cir. 2004); 20A James Wm. Moore et al., Moore's Federal Practice ¶ 341.15[2] at p. 341-14. Sometimes, it amounts to a wholesale reversal. *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1530 (9th Cir. 1989) (vacating *en banc* decision based on intervening legislation); *Calderon*, 523 U.S. at 557-58. But in all cases, recall of the mandate sends a strong signal that the decision is to be modified or rescinded. *See Calderon*, 523 U.S. at 550, 557-58.

---

[4] Given that the mandate in a case is routinely issued following the release of the court's decision, it is hardly surprising that courts treat it as a purely ministerial function and apply the reasoning of the decision, even before the mandate is issued. *See, e.g., Vo Van Chau v. U.S. Dep't of State*, 891 F. Supp. 650, 654 (D.D.C. 1995). That courts routinely assume that the mandate will issue in cases in which there is no petition for stay or recall does not, however, mean that a stay or recall is irrelevant to the finality of the decision. To the contrary, a stay or recall of the mandate, which generally requires that the moving party make a substantial showing concerning its likelihood of success (*see, e.g.*, Fed. R. App. P. 41(d)(2)(A) and *Calderon*, 523 U.S. at 557-58) deprives the decision of finality and strongly suggests that it should not be cited as precedent.

It is beyond dispute that a new mandate will be issued in *Boumediene* after the Supreme Court issues its decision on the merits. That mandate, the contents of which cannot be predicted at this time, will reflect the Supreme Court's decision as well as any further proceedings in the Circuit. Until it is issued, the current *Boumediene* decision is not binding even on the parties to that proceeding. Despite this lack of finality and fundamental uncertainty, respondents urge this Court to apply *Boumediene* in an unrelated case. This would be error.

### C. The Requested Relief Does Not Improperly Interfere With Executive Functions.

Respondents argue that providing the modest relief requested by petitioner will interfere with the executive's foreign policy functions. This Court has expressly rejected this argument in prior proceedings. As the Court noted in *Al-Marri,*

> Beyond vague premonitions that such relief would harm the executive's ability to conduct foreign policy, there is no concrete evidence that such notice actually will intrude upon executive authority. For example, granting Petitioner's request for 30 days' notice of transfer would not require the Court to second-guess foreign policy decisions of the executive, would not require the Government to divulge information relating to its negotiations with foreign governments, and would not prevent the Government from speaking with one voice.

2005 U.S. Dist. LEXIS 6259, at 18-19 (internal citations omitted). Respondents' arguments regarding interference with executive functions with respect to Petitioner Rohullah's request are similarly reliant on "vague premonitions" and should be rejected by the Court.

### CONCLUSION

This Court has authority under the All Writs Act to issue an order requiring respondents to provide notice prior to transfer of Petitioner Rohullah from their custody. As demonstrated in Petitioner Rohullah's moving papers, he will suffer irreparable harm if the requested relief is denied. This Court has previously recognized the potential for irreparable harm in similar cases. *See, e.g., Al-Marri v. Bush*, No. 04-2035, 2005 U.S. Dist. LEXIS 6259, at *11 (D.D.C. Apr. 4,

8

2005); *Al-Joudi v. Bush*, No. 05-301, 2005 U.S. Dist. LEXIS 6265, at *11 (D.D.C. Apr. 4, 2005). Respondents' have failed to demonstrate any harm to the Government at all if it is required to comply with petitioners' modest request for notice prior to transfer. Consequently, the Court should enter an injunction requiring respondents to provide counsel for petitioners and the Court with 30-days' advance notice of any intended removal of Petitioners Rohullah from the United States detention facility at Bagram.

                                                Respectfully submitted,

| /s/ A. Katherine Toomey | /s/ Tina Foster |
|---|---|
| Eric L. Lewis (#394643) | Tina Foster |
| Dwight P. Bostwick (#427758) | International Justice Network |
| A. Katherine Toomey (# 426658) | P.O. Box 610119 |
| Baach, Robinson & Lewis PLLC | Bayside, NY 11361-0119 |
| 1201 F Street, NW, Suite 500 | Tel. +1 917 442 9580 |
| Washington, DC 20004 | Fax. +1 917 591 3353 |
| Tel: (202) 833-8900 | |
| Fax: (202) 466-5738 | |

Dated: August 4, 2007