IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUZATULLAH, *et al.*, | ) |
| Petitioners, | ) |
| v. | ) Civil Action No. 06-CV-01707 (GK) |
| DONALD RUMSFELD, Secretary, United States Department of Defense, *et al.*, | ) |
| Respondents. | ) |

**RESPONDENTS' REPLY IN SUPPORT OF THEIR
SUPPLEMENT TO MOTION TO DISMISS**

Respondents submit this reply in support of their supplement to their motion to dismiss filed on July 9, 2007, in which they argued that petitioner Ruzatullah's habeas petition is moot. The respondents informed the Court that, on or about June 19, 2007, the United States transferred Ruzatullah, then a detainee at Bagram Airfield in Afghanistan, to the exclusive custody and control of the Islamic Republic of Afghanistan ("IRoA"). In opposition, Ruzatullah argues that the United States might have constructive custody of him because the United States likely has imposed certain terms and conditions regarding his transfer and because the United States allegedly operates and supervises the Afghan National Detention Center in Pol-e-Charki ("ANDF"), where he is currently incarcerated. Petitioner further argues that he is entitled to discovery regarding these issues.

As discussed below, the United States does not have constructive custody of petitioner. Although the United States has received certain humanitarian and security assurances from the IRoA regarding the transfer of Bagram detainees to its custody, the United States does not retain any legal or physical control of the detainees. Once transferred, the continued detention,

prosecution, or release of the detainees is within the sole discretion of the IRoA under Afghan law. Moreover, contrary to petitioner's speculation, the United States does not control the operation of the ANDF. The ANDF is controlled by the Afghan Ministry of Defense and operated by the Afghan National Guard Force, with the United States military serving only as mentors to advise the IRoA about operation of the prison consistent with international standards. Finally, not only is jurisdictional discovery inappropriate now given that this Court clearly lacks jurisdiction under the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, and the D.C. Circuit's binding precedent of *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *cert. granted*, 127 S. Ct. 3076 (June 29, 2007) (No. 06-1195), but this Court's grant of discovery would violate the separation of powers and constitute a serious intrusion into sensitive matters of war-making and foreign relations.

## ARGUMENT

I. **THE UNITED STATES DOES NOT HAVE CONSTRUCTIVE CUSTODY OF PETITIONER RUZATULLAH**

The federal habeas statute confers jurisdiction on the district courts if, among other things, the habeas petitioner is "in custody under or by the color of the authority of the United States." 28 U.S.C. § 2241(c). Even if this provision is applicable to petitioner, which it is not, petitioner cannot meet this standard because he is in the exclusive custody and control of the IRoA and the United States does not have constructive custody over him. "A [habeas petitioner] is in the constructive custody of the United States when he is in the actual, physical custody of some person or entity who cannot be deemed the United States, but is being held under the authority of the United States or on its behalf." *Mohammed v. Harvey*, 456 F. Supp. 2d 115, 122 (D.D.C. 2006). Clearly, the United States has no authority over the IRoA, which is a foreign sovereign.

Nor is the IRoA's detention of petitioner at the behest, or under the ongoing supervision, of the United States. The U.S. military's presence in Afghanistan is to "establish security, deter the re-emergency of terrorism, and enhance the sovereignty of Afghanistan." *See* Declaration of Rose M. Miller ["Miller Decl."], ¶ 2 (dkt #6). Consistent with that mission and pursuant to diplomatic arrangements reached with the IRoA, the United States expects to transfer a significant percentage of the Afghan detainees at Bagram Airfield to the exclusive custody and control of the IRoA. *Id.* ¶ 15. The IRoA, in turn, has provided assurances that it would treat individuals transferred to its custody, such as Ruzatuallh, humanely and in accordance with the laws and international obligations of the IRoA. *See* Declaration of Colonel Anthony Zabek (attached hereto), ¶ 4. It also agrees to accept responsibility for ensuring, consistent with its laws, that the detainees will not pose a continued threat to the United States and its allies. *Id.* The implementation and enforcement of any specific measure, however, is committed to the IRoA's exclusive discretion and not within the control of the United States. *Id.*

Thus, as the attached declaration of Colonel Anthony Zabek demonstrates, the release, continued detention, and/or prosecution of the transferred detainees is within the IRoA's exclusive control. *Id.* ¶ 5. The Afghan Detainee Review Board, which is led by the Afghan Office of the National Security Council under the exclusive jurisdiction and control of the IRoA, is the entity charged with determining whether to release a detainee. *Id.* Specifically, the Board will release a detainee from the ANDF if it determines that such release is appropriate under Afghan law. *Id.* For example, on 16 August 2007, a detainee the United States had recently transferred to the IRoA was released after it concluded there was insufficient evidence to prosecute the detainee under Afghan law. *Id.* The United States has no control over any of the Board's decisions. *Id.*

Petitioner Ruzatullah was transferred pursuant to the process described above, and the IRoA is detaining him at the ANDF pursuant to Afghan law. *Id.* ¶ 6. His future status is a matter within the sole discretion of the IRoA and the processes that exist under Afghan law. *Id.* The United States retains no control over his current detention or future status, and thus, does not have constructive custody of him.

As for petitioner's speculation that the ANDF is operated by the United States military, he is wrong. The ANDF is the former block IV of the Pol-e-Charki prison. *Id.* ¶ 2. Pursuant to a diplomatic arrangement with the IRoA, the United States refurbished the ANDF in order to facilitate the transfer of Afghan detainees and to ensure an Afghan detention capability that meets international standards. *See* Miller Decl. ¶ 15. The ANDF, however, is owned by the IRoA, controlled by the Afghan Ministry of Defense, and operated by the Afghan National Guard Force.[1] *See id.*; Zabek Decl. ¶¶ 2, 3. While the United States has also agreed to assist the IRoA regarding the operation of the prison, Miller Decl. ¶ 15, that assistance is strictly one of mentoring. Zabek Decl. ¶ 2, 3. United States Army, Marine Corps, Navy and Air Force personnel (as well as contractor personnel) are present at the ANDF during the day to coach and train the Afghan National Guard Force and to provide technical guidance about detention operations consistent with international standards. *Id.* ¶ 3. In the evening hours, two temporary American contractor personnel continue to provide such support to the over fifty Afghan National Guard Force personnel who run the prison at night. *Id.* The American mentors have no role in the disposition of the prisoners. *Id.* Thus, petitioner's argument that he is in the constructive custody of the United States because of U.S. Military presence at the ANDF has no

---

[1] The remainder of the prison is under the control of the Afghan Ministry of Justice and houses individuals convicted of crimes in the civilian courts. Zabek Decl, ¶ 2.

merit.

*Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28 (D.D.C. 2004) (J. Bates), which petitioner cites in support of his constructive custody argument and claim of entitlement to jurisdictional discovery, is inapposite. In *Abu Ali*, the court permitted limited jurisdictional discovery in a habeas case to determine whether the United States was using a foreign government, the Kingdom of Saudi Arabia, to detain a U.S. citizen in a collusive effort to avoid the jurisdiction of the United States courts. The petitioner there alleged (providing some evidence) that the United States had constructive custody of him because he was detained by the Saudis at the behest of the United States officials, because the United States was keeping him in Saudi Arabia to avoid constitutional scrutiny by American courts, and because the Saudis would immediately release him to United States officials upon a request by the U.S. Government. *See id.* 67-68. The petitioner alleged, for example, that U.S. officials had informed him that a grand jury refused to return an indictment against him. *Id.* at 54. The Government moved to dismiss but chose not to put forth a factual rebuttal at that time. *See id.* at 67 ("This evidence stands unrebutted, as respondents have chosen not to engage petitioners on their factual contentions."). The court denied the motion and ordered limited jurisdictional discovery to determine the constructive custody issue.

No jurisdictional discovery is warranted here under *Abu Ali*. To begin with, the circumstance that "the detainee in *Abu Ali* was a United States citizen, [was] a fact that featured prominently in the reasoning of that case." *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 197 n.9 (D.D.C. 2005) (J. Bates). *See also Abu Ali*, 350 F. Supp. 2d at 55 ("The differences between the *rights of citizens* and the rights of aliens are considerable in this [habeas] context") (emphasis added); *id.* ("this is an exceptional situation that demands particular attention to the *rights of the*

*citizen*") (emphasis added); *id.* at 59 (each of the "weighty principles: the act of state, separation of powers, and political questions doctrines" is "an important consideration. . . . None, however, extinguishes the fundamental right of *a citizen* to challenge his detention colorably alleged to be at the behest of the executive.") (emphasis added). Of course, under *Hirota v. MacArthur*, 337 U.S. 197 (1948), even a citizen who is not in custody under or by the color of the authority of the United States would not be entitled to habeas relief. Ruzatullah is not a citizen. Therefore, *Abu Ali* is of no help to him.[2]

In any event, the "weighty principles" of separation of powers, act of state, and political question, significantly counsel against this court from granting discovery. As respondents have discussed separately in their opposition to the motion of Rohullah, another petitioner in this case, for a 30 days' advance notice of any proposed transfer from Bagram, the judiciary's intrusion into areas of war-making and foreign relations, which have been constitutionally vested in the Executive, would significantly compromise the Government's ability to interact effectively with a foreign government, and undermine the President's constitutional authority as Commander-in-Chief. This is particularly true here when the court is asked to insert itself into the most sensitive of diplomatic matters – to order discovery in a zone of active military hostility regarding the United States' transfer of Afghan citizens detained on Afghan soil to the IRoA, all in the context of a war and on-going U.S. military presence in Afghanistan.

---

[2] The court in *Abu Ali* subsequently dismissed the case as moot because the petitioner was released from Saudi custody and returned to the United States, where he faced criminal prosecution. *Abu Ali v. Gonzales*, 387 F. Supp. 2d 16, 17 (D.D.C. 2005). These fact rendered the case moot, the court held, because they indicated a "fundamental change in the nature of [petitioner's] detention," because they meant that he had obtained the release from Saudi custody and repatriation that he had sought, and because they meant that he was "beyond the reach of [the] Court's habeas jurisdiction." *Id*. at 18-19.

The discovery presumably would also inquire into the IRoA's detention of petitioner under Afghan law, when such inquiries are beyond the purview of this Court. *See Worldwide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1164-65 (D.C. Cir. 2002) ("The act of state doctrine precludes the courts of this country from inquiring into the validity of the public acts of a recognized foreign sovereign power committed within its own territory.") (internal quotation marks and citation omitted). *Cf., e.g.*, *Matter of Requested Extradition of Smyth*, 61 F.3d 711, 714 (9th Cir. 1995) (discussing "rule of non-inquiry" which has to do with "the notion that courts are ill-equipped as institutions and ill-advised as a matter of separation of powers and foreign relations policy to make inquiries into and pronouncements about the workings of foreign countries' justice systems").

*Abu Ali* does not help petitioner for another reason. The respondents in *Abu Ali* chose not to present a factual rebuttal and thus, the "court was obligated to accept petitioners' allegations of collusion between the United States and [the foreign government at issue] as true." *Al-Anazi*, 370 F. Supp. 2d at 197 n.9. And, as the court noted, "[i]t is well-established that 'the federal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the Federal courts for the protection of their rights in those tribunals.'" *Abu Ali*, 350 F. Supp. 2d at 54 (quoting *Alabama Great S. R. Co. v. Thompson*, 200 U.S. 208, 218 (1906)).

Here, in contrast, the respondents have presented a factual rebuttal that establishes that the transfer of petitioner Ruzatullah is not the result of any collusive effort to deprive him of an opportunity to be heard by United States courts. As respondents have demonstrated, the United States has partnered with the Afghans to help "establish security, deter the re-emergence of terrorism and enhance the sovereignty of Afghanistan." *See* Miller Decl. ¶ 2. The transfer of

7

petitioner is consistent with that partnership and was legitimately made pursuant to the two countries' diplomatic arrangements regarding Bagram detainees. Petitioner's current detention is under Afghan law and not at the behest of the United States. Accordingly, he is no more in the United States' constructive custody than a U.S. citizen who is extradited to the United States from another country would be in the constructive custody of that foreign country's government.

Finally, in *Abu Ali*, there was no question of the court's habeas jurisdiction over an American citizen if, as the petitioner alleged there, the United States had constructive custody of the petitioner. In order to proceed in that case, the court needed to resolve the threshold issue of constructive custody. Here, regardless of the custody issue, this Court has no jurisdiction under the express language of the MCA and the D.C. Circuit's decision in *Boumediene*, and no power to order any discovery now.[3] Thus, should this Court believe that material factual issues remain regarding the custody issue, instead of ordering discovery, it should first address respondents' jurisdictional argument under the MCA and *Boumediene*, or at least hold the case in abeyance

---

[3] The fact that the Supreme Court has decided to hear *Boumediene* does not give this Court jurisdiction to act now. Under settled rules governing the precedential effect of appellate rulings, *Boumediene* remains the binding law of this Circuit. *See Maxwell v. Snow*, 409 F.3d 354, 358 (D.C. Cir. 2005) ("this Court is bound to follow circuit precedent until it is overruled either by an *en banc* court or the Supreme Court"); *Chambers v. United States*, 22 F.3d 939, 942 n.3 (9th Cir. 1994) ("In this circuit, once a published opinion is filed, it becomes the law of the circuit until withdrawn or reversed by the Supreme Court or an en banc court."), *vacated on other grounds*, 47 F.3d 1015 (1995). *See also Vo Van Chau v. U.S. Dep't of State*, 891 F. Supp. 650, 654 (D.D.C. 1995) (district court is bound by principle of *stare decisis* to abide by a Court of Appeals decision even in absence of effective mandate). Activity in the Supreme Court short of a reversal does not diminish the binding nature of the D.C. Circuit's *Boumediene* decision. *Ayuda, Inc. v. Thornburgh*, 919 F.2d 153, 154 (D.C. Cir. 1990) (Henderson, J., concurring) ("Unless and until [the D.C. Circuit's earlier opinion] is reversed or overruled by the United States Supreme Court or by this court *en banc*, [the earlier opinion] remains the law of this circuit and no amount of hardship the appellees may suffer as a consequence can confer jurisdiction on the district court.").

pending the Supreme Court's ruling in *Boumediene*.

**II.    THE PETITIONER HAS NOT MET HIS BURDEN OF SHOWING THAT HIS DESIGNATION AS AN ENEMY COMBATANT CARRIES COLLATERAL CONSEQUENCES THAT PREVENT THIS CASE FROM BEING RENDERED MOOT**

Petitioner argues even if he were not in the United States' constructive custody, he continues to suffer collateral consequences flowing from his enemy combatant designation such that his habeas petition is not moot despite his release from U.S. custody. Petitioner points to the "collateral consequence" of his continued detention by the IRoA and speculates that there may be other consequences that "are largely unknown to petitioner at this point but which are likely to affect him in the future." Pet. Opp. at 12.

"[F]or a court to exercise habeas jurisdiction over a petitioner no longer in custody, the petitioner must demonstrate that . . . his subsequent release has not rendered the petition moot, *i.e.*, that he continues to present a case or controversy under Article III, § 2 of the Constitution." *Qassim v. Bush*, 466 F.3d 1073, 1078 (D.C. Cir. 2006) (quoting *Zalawadia v. Ashcroft*, 371 F.3d 292, 297 (5th Cir. 2004) (alteration in original)). The petitioner therefore bears the burden of showing that the case or controversy underlying the habeas petition persists because he continues to face collateral consequences related to his detention. Petitioner Ruzatullah has not met this burden.

As an initial matter, the designation of enemy combatant by itself does not carry the type of "collateral consequence" sufficient to present a case or controversy in a habeas case despite release from custody. Indeed, when examining the availability of habeas relief after release from custody, the Supreme Court has never presumed that adverse collateral consequences will flow from a determination other than a criminal conviction. *See Spencer v. Kemna*, 523 U.S. 1, 7-14

(1998) (declining to presume adverse collateral consequences flowing from revocation of parole); *Lane v. Williams*, 455 U.S. 624, 631–33 (1982) (declining to presume adverse collateral consequences from determinations that the respondents had violated parole). An enemy combatant designation is not a criminal conviction; the identification and detention of enemy combatants is a preventive measure taken "to prevent captured individuals from returning to the field of battle and taking up arms once again." *See Hamdi v. Rumsfeld*, 542 U.S. 507, 518 (2004) (plurality opinion). Thus, to avoid dismissal, petitioner bears the burden of identifying specific collateral consequences that he presently faces as a result of the enemy combatant designation. Speculative or intangible repercussions are not sufficient. *See, e.g., McBryde v. Cmte. to Review Circuit Council Conduct & Disability Orders of the Judicial Conf. of the U.S.,* 264 F.3d 52, 57 (D.C. Cir. 2001) (noting that "when injury to reputation is alleged as a secondary effect of an otherwise moot action, we have required that 'some tangible, concrete effect' remain, susceptible to judicial correction.").

The only specific "collateral consequence" petitioner has identified is his continued detention by the IRoA. However, it is settled that potential repercussions flowing from independent acts by third parties and foreign sovereigns, and not directly from the acts of the respondents, would not establish a case or controversy even if those repercussions were present or imminent. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (when the issue of justiciability "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict, . . . it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit

redressability of injury"); *Greater Tampa Chamber of Commerce v. Goldschmidt*, 627 F.2d 258, 263 (D.C. Cir. 1980) (holding that a challenge against an executive agreement was not a justiciable case or controversy in part because redress of the plaintiffs' alleged injuries would depend on the independent response of the United Kingdom).

Thus, in *Idema v. Rice*, 478 F. Supp. 2d 47 (D.D.C. 2007), and 2007 WL 841391 (July 12, 2007), the Court found that damage to a petitioner's professional reputation and denial of parental visitation rights did not amount to collateral consequences that would allow the petitioner to continue to pursue a habeas corpus action challenging his alleged unlawful detention in Afghanistan. *Id.* at *3-*4. The Court found that the alleged adverse consequences, however serious, did not prevent the habeas action from becoming moot, because they were "based on the discretionary decisions of employers or judges and [were] not legally prescribed consequences of incarceration" that were "imposed by state or federal law." *Id.* at *3. The Court further observed that a grant of habeas corpus relief would not necessarily affect the decisions of employers, family court judges, or foreign authorities. *Id.* at *3.

Petitioner Ruzatullah has not shown that a favorable decision in this case would secure his release from the IRoA, and in fact he cannot. As discussed above, he is detained by the IRoA under Afghan law. "The IRoA uses its own investigators, prosecutors, and judges to determine whether and how to prosecute detainees in their custody." Zabek Decl. ¶ 5. Petitioner Ruzatullah's future status (*i.e.*, whether prosecution, release, transfer into the Afghan national reconciliation program for return to the village elders, or other disposition) is entirely within the discretion of the IRoA. *Id.* ¶¶ 5-6. In other words, "redress of [petitioner's] alleged injuries would depend on the independent response of the [foreign government]." *Goldschmidt*, 627 F.2d

at 263 (D.C. Cir. 1980). There is no case or controversy, and petitioner's habeas petition should be dismissed as moot.

Finally, because petitioner has not made the threshold showing required to prevent dismissal of the petition, petitioner also cannot obtain discovery seeking information on the issue of collateral consequences, if any, from his enemy combatant designation. *Cf. Consejo Puertorriqueno por la Paz v. Director, FBI*, 458 F. Supp. 1041, 1043 (D.D.C. 1978) (refusing to authorize discovery because "the complaint must stand or fall on its own merits and cannot be used as a vehicle for searching out and discovering a right of action" (quoting *Fifth Avenue Peace Parade Cmte. v. Gray*, 480 F.2d 326, 333 (2d Cir. 1973))).

## CONCLUSION

For the foregoing reasons, this Court should deny petitioner Ruzatullah's habeas petition as moot.

Dated: September 5, 2007          Respectfully submitted,

                                  PETER D. KEISLER
                                  Assistant Attorney General

                                  DOUGLAS N. LETTER
                                  Terrorism Litigation Counsel

                                     /s/   Jean Lin
                                  JOSEPH H. HUNT (D.C. Bar No. 431134)
                                  VINCENT M. GARVEY (D.C. Bar No. 127191)
                                  JUDRY L. SUBAR (D.C. Bar No. 347518)
                                  JEAN LIN
                                  Attorneys
                                  United States Department of Justice
                                  Civil Division, Federal Programs Branch
                                  20 Massachusetts Ave., N.W.
                                  Washington, DC  20530
                                  Tel:  (202) 514-3716

Fax: (202) 616-8470

Attorneys for Respondents