IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RUZATULLAH, *et al.*, ) | |
| Petitioners, ) | |
| v. ) | Civil Action No. 06-CV-01707 (GK) |
| ROBERT GATES, Secretary, United States ) Department of Defense, *et al.,* ) | |
| Respondents. ) | |

**RESPONDENTS' OPPOSITION TO PETITIONER RUZATULLAH'S
MOTION FOR A REPORT**

**PRELIMINARY STATEMENT**

Petitioner Ruzatullah, an Afghan national who was a detainee at the U.S. military base in Bagram, Afghanistan, was transferred to the exclusive custody and control of the Islamic Republic of Afghanistan ("IRoA") in June 2007, and is currently detained by IRoA in the Afghan National Detention Center ("ANDF"). Apparently upon learning of the execution of several individuals (who were convicted of various crimes and sentenced to death under Afghan law) at the Afghan prison in Pol-e-Charki, where ANDF is also located, Ruzatullah seeks from this Court an order requiring respondents to provide information regarding whether he is known to be scheduled for execution by IRoA; whether he has been charged with a crime or an offense; and whether the terms and conditions of his transfer from United States to IRoA custody prohibit his execution.

Ruzatullah's motion should be denied. This Court does not have jurisdiction over this habeas petition as a whole, nor does it have jurisdiction over this specific motion. Moreover, an

order granting the relief petitioner seeks would run afoul of significant separation of powers concerns. The imposition by the Court of a reporting obligation for respondents with regard to the status of a foreign detainee captured on foreign soil and transferred to a foreign sovereign's exclusive custody and control would undermine exclusive military and foreign policy prerogatives of the Executive Branch. Further, as respondents have demonstrated before, Ruzatullah is in the custody and control of IRoA now, and his status now and in the future is a matter within the sole discretion of IRoA and the processes that exist under Afghan law. As a practical matter, moreover, a report of information that might be provided by respondents necessarily would not provide a complete and up-to-date statement of Ruzatullah's status; it could not bind respondents in any way nor would it provide a reliable basis for informing counsel or the Court because respondents have no control over IRoA. Thus, the relief Ruzatullah seeks would not meaningfully address any harm to which this motion might be addressed. Accordingly, Ruzatullah has not met the significant burden that he faces in asking for an injunctive order requiring a report from respondents, and this Court should deny his motion.

## ARGUMENT

**I.     THIS COURT LACKS JURISDICTION TO GRANT THE REQUESTED RELIEF**

   **A.     The Court Does Not Have Jurisdiction Over This Habeas Petition**

Respondents have briefed extensively this Court's lack of jurisdiction over this habeas petition and respectfully refer this Court to their filings in support of their Motion to Dismiss (incorporated fully herein by reference), which this Court denied without prejudice on September 13, 2007 (dkt. #31). Respondents will provide below only a brief summary of the arguments demonstrating the Court's lack of jurisdiction.

1.      In *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *cert. granted*, 127 S. Ct. 3078 (June 29, 2007), the Court of Appeals upheld the constitutionality of the provision of the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, § 7, 120 Stat. 2600 (2006), in which Congress expressly provided that this Court lacks jurisdiction over habeas corpus proceedings such as this. Under settled rules governing the precedential effect of appellate rulings, regardless of what might happen in the future in the course of the *Boumediene* litigation, this Court must act in accordance with the decision in that case now. *See Maxwell v. Snow*, 409 F.3d 354, 358 (D.C. Cir. 2005) ("this Court is bound to follow circuit precedent until it is overruled either by an *en banc* court or the Supreme Court"); *Chambers v. United States*, 22 F.3d 939, 942 n.3 (9th Cir. 1994) ("In this circuit, once a published opinion is filed, it becomes the law of the circuit until withdrawn or reversed by the Supreme Court or an *en banc* court."), *vacated on other grounds*, 47 F.3d 1015 (9th Cir. 1995). That the Supreme Court has granted *certiorari* in *Boumediene* has no effect on the binding nature of the D.C. Circuit's decision. *See Ayuda, Inc. v. Thornburgh*, 919 F.2d 153, 154 (D.C. Cir. 1990) (Henderson, J., concurring). "Unless and until [a decision of the Court of Appeals] is reversed or overruled by the United States Supreme Court or by [the Court of Appeals] *en banc*, it remains the law of this circuit and no amount of hardship the appellees may suffer as a consequence can confer jurisdiction on the district court." *Id.*

      To be sure, this Court noted in an earlier ruling in this matter that because the D.C. Circuit has withdrawn its mandate in *Boumediene*, it could in theory modify or rescind its decision in that case. But that, of course, does nothing to change this Court's obligation to follow the law of this Circuit; indeed, it endorses the fact that this Court lacks jurisdiction to

3

proceed with respect to this matter. As Judge Henderson pointed out in *Ayuda*, "stay of the mandate merely delayed return to the district court of jurisdiction over the [claims at issue] and the exercise of its duty to dismiss them; it did not affect the district court's duty– or ours – to apply the law set forth in [the appellate opinion] to parties not involved in the appeal." *Id.* In other words, once an appellate opinion is issued, "it becomes the law of the circuit" regardless of whether the mandate has been issued. *Id. See also Vo Van Chau v. U.S. Dep't of State*, 891 F. Supp. 650, 654 (D.D.C. 1995) (holding that district court was bound by principle of *stare decisis* to abide by a Court of Appeals decision even in absence of effective mandate).

Making that point absolutely clear, on more than one occasion since the Supreme Court granted *certiorari* in *Boumediene*, the Court of Appeals itself has relied on *Boumediene* in denying motions by detainees who brought cases governed by the MCA. *See Hamlily v. Gates*, No. 07-1127 (D.C. Cir. July 16, 2007) (petition for rehearing pending) (attached as Exhibit 1); *Belbacha v. Bush*, No. 07-5258 (D.C. Cir. Aug. 2, 2007) (attached as Exhibit 2). The *Hamlily* ruling cites the jurisdictional provisions of the MCA. In *Belbacha*, which was decided after the D.C. Circuit recalled its mandate in *Boumediene*, the Court of Appeals expressly relied on *Boumediene* and *Maxwell v. Snow* in refusing to deviate from circuit precedent. And in *Belbacha*, the Supreme Court likewise denied a motion for emergency relief. *Belbacha v. Bush*, No. 07A98 (U.S. Aug. 10, 2007) (attached as Exhibit 3).

2.      While the MCA and the *Boumediene* ruling show that this Court lacks jurisdiction over this habeas matter, the fact that Ruzatullah, a non-resident alien, filed his habeas petition while a detainee at a U.S. military base in Afghanistan further confirms that this habeas petition is not within the Court's jurisdiction. The federal habeas statute, 28 U.S.C. § 2241(a), has never

been interpreted to provide aliens held at military bases overseas a right to habeas relief, except in the unique circumstances of Guantanamo Bay, Cuba. *Rasul v. Bush* held that Guantanamo detainees had statutory habeas rights based on the unique "plenary and exclusive jurisdiction" that the United States has had at that location for over a century. 542 U.S. 466, 471 (2004). But no similar circumstances exist here.

Nor does petitioner have a constitutional right to habeas relief. In *Johnson v. Eisentrager*, the Supreme Court held that an alien, such as Ruzatullah, who was captured and detained abroad by the United States military, has no constitutional right to habeas relief. *See* 339 U.S. 763, 777, 784-85 (1950). In *United States v. Verdugo-Urquidez*, the Supreme Court further emphasized that even a detainee held in United States territory must demonstrate that he has substantial voluntary connections with this country to invoke constitutional protections, 494 U.S. 259, 271-72 (1990), a showing Ruzatullah has not made.

3. Even if this Court had jurisdiction when this habeas petition was filed, Ruzatullah has since been transferred to the exclusive custody and control of IRoA, rendering moot his habeas claims. *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990) (the lack of a continued personal stake in the outcome of a lawsuit deprives a federal court of jurisdiction); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("the essence of habeas corpus is an attack by a person in custody upon the legality of that custody"). While Ruzatullah has *asserted* that he is in the constructive custody of the United States, he cannot prevail on that argument. Respondents have provided sworn declarations establishing that the United States has relinquished all legal and physical custody of Ruzatullah to IRoA, which Ruzatullah has not rebutted. *See* Declaration of Colonel Anthony Zabek, ¶ 6 (dkt. #30); Second Declaration of Colonel James W. Gray, ¶ 2

(dkt. #21); *see also* Zabek Decl., ¶ 2 ("The [United States military] does not control the operations of the ANDF nor access to its detainees. It also does not control the future disposition of the detainees at the ANDF."). Ruzatullah also bases his "constructive custody" argument on the decision in *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28 (D.D.C. 2004) (J. Bates). But the fact that "the detainee in *Abu Ali* was a United States citizen[] [was] a fact that featured prominently in the reasoning of that case." *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 197 n.9 (D.D.C. 2005) (J. Bates). Ruzatullah is not a citizen, and thus, that decision does not help petitioner. Moreover, the decision in *Abu Ali* turned on specific facts alleged in that case that are not present here, and, importantly, the court in *Abu Ali* never found that it had jurisdiction over Abu Ali's claims even on the constructive custody theory applied there.

      B.      **The Court Lacks Jurisdiction Over This Motion**

Not only does this Court lack jurisdiction over this habeas matter as a whole, but the MCA also precludes this Court from granting the specific relief petitioner seeks by expressly barring any claims regarding, *inter alia*, the treatment of an alien enemy combatant. *See* 28 U.S.C. § 2241(e)(2) (added by MCA § 7(a)) ("[with the exception of Detainee Treatment Act proceedings initiated in the Court of Appeals,] no court, justice, or judge shall have jurisdiction to hear or consider *any other action* against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement [of alien enemy combatant detainees]") (emphasis added). In other words, separate from the question of whether this habeas petition could proceed – and whether or not Ruzatullah has asserted some constructive custody theory – this Court has no jurisdiction to require respondents to report on the status of Ruzatullah with regard to his detention, transfer, treatment, trial, or conditions of

confinement. This separate MCA provision is not implicated by the pendency of the *Boumediene* case which concerns the provision of the MCA that eliminated district court jurisdiction over habeas cases generally. Thus, even if the Supreme Court reverses the D. C. Circuit's decision in *Boumediene*, such an outcome would not affect 28 U.S.C. § 2241(e)(2), which precludes district court jurisdiction over requests for relief such as that at issue here. Consequently, even if this Court were to hold that it has habeas jurisdiction in this case, this separate provision of the MCA requires that the present motion be denied.

      **C.**    **The All Writs Act Would Not Provide a Basis for the Relief Sought Here**

Respondents recognize that this Court relied on the All Writs Act, 28 U.S.C. § 1651(a) (courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions"), to grant a motion made on behalf of another petitioner in this case for notice to be given before his transfer to IRoA custody. Order of Oct. 2, 2007 (dkt. # 32). This Court reasoned that it has jurisdiction to consider its jurisdiction and a transfer would interfere with whatever jurisdiction the Court might have. *Id.* That reasoning, however, does not apply here.[1] The question presented by Ruzatullah's motion is whether respondents will be ordered to provide certain information. The grant or denial of the motion would not aid or undercut the Court's ability to

---

[1] Setting aside the consideration that this Court's reasoning in the pre-transfer notice context does not apply here, the All Writs Act provides no basis for the relief requested here. The All Writs Act "'confines [that] authority to the issuance of process 'in aid of' the issuing court's jurisdiction" and "does not enlarge that jurisdiction.'" *In re Tennant*, 359 F.3d 523, 527 (D.C. Cir. 2004) (quoting *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999)). The question, therefore, is not whether the Supreme Court might in the future decide *Boumediene* in such a way as to demonstrate that this Court has jurisdiction over this matter, but rather, whether this Court currently has jurisdiction to take the action that petitioner seeks. And as respondents have fully demonstrated, this Court currently lacks jurisdiction over this case. Thus, the All Writs Act does not provide the Court with authority to issue the order for which Ruzatullah has moved.

exercise its jurisdiction; rather, it would simply provide information to the Court and to petitioner's counsel. Therefore, the All Writs Act simply does not apply.

## II. JURISDICTIONAL CONSIDERATIONS ASIDE, RUZATULLAH IS NOT ENTITLED TO THE ORDER FOR WHICH HE HAS MOVED

### A. Petitioner Has Not Shown That He Is Entitled To the Relief He Seeks

Beyond the jurisdictional considerations, this Court should deny Ruzatullah's motion for two additional reasons: Ruzatullah has no right to the information he seeks, and, in any event, significant constitutional obstacles preclude this Court from issuing the requested order.

1. Petitioner seeks an order requiring respondents to provide information to his counsel and to the Court. He cites no law entitling him to the information because no legal basis exists for an order requiring the provision of any such information. *See, e.g., Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) ("Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control."); *Senate of State of Cal. v. Mosbacher*, 968 F.2d 974, 976-77 (9th Cir. 1992) (holding that there is "no law to apply" on Administrative Procedure Act review of agency decision to withhold information from public disclosure, rendering action unreviewable). Indeed, the two methods that are often used to obtain information from an opposing party in litigation or from the government – discovery and a request through the Freedom of Information Act ("FOIA"), respectively – do not apply here. As to the first, aside from the fact that the requested information is not subject to any discovery request by petitioner, "'[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course.'" *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (quoting *Harris v. Nelson*, 394

U.S. 286, 295 (1969)). As to the second, Ruzatullah has made no FOIA request for the information, and in any event, would have to first exhaust administrative remedies before seeking relief in court. 5 U.S.C. § 552.

        2.        It is apparent that Ruzatullah's purpose for requesting the information is so that he would then ask this Court to intrude into the criminal prosecution of a foreign national by a foreign sovereign, which is "a matter beyond the purview of this court." *Holmes v. Laird*, 459 F.2d 1211, 1215 (D.C. Cir. 1972) (suit by U.S. citizen service members convicted of crimes in West Germany to enjoin their transfer to that country to serve their sentences; court refusing to examine the fairness of their treatment by the foreign government or to enjoin the transfer); *cf. U.S. ex rel. Keefe v. Dulles*, 222 F.2d 390, 394 (D.C. Cir. 1955) (in case involving U.S. soldier in French custody, court declined to interfere with French criminal proceeding against soldier). Petitioner is a citizen of Afghanistan who has been transferred to the custody and control of IRoA and whose status now and in the future is a matter within the sole discretion of IRoA. Issues relating to his future release, continued detention, and/or prosecution by IRoA under Afghan law are beyond the purview of this Court. *See Worldwide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1164-65 (D.C. Cir. 2002) ("The act of state doctrine precludes the courts of this country from inquiring into the validity of the public acts of a recognized foreign sovereign power committed within its own territory.") (internal quotation marks and citation omitted). *Cf., e.g.*, *Matter of Requested Extradition of Smyth*, 61 F.3d 711, 714 (9th Cir. 1995) (discussing "rule of noninquiry" which has to do with "the notion that courts are ill-equipped as institutions and ill-advised as a matter of separation of powers and foreign relations policy to make inquiries into and pronouncements about the workings of foreign countries' justice systems").

Petitioner argues that, at a minimum, respondents should be able to report to the Court and to his counsel whether the terms and conditions of his transfer to Afghan custody included a stipulation that he not be subject to capital punishment under Afghan law.  By asking respondents to report to this Court the substance of its communications with a foreign sovereign regarding the transfer of an alien enemy combatant captured by the United States on foreign soil during an on-going war, Ruzatullah in effect is requesting this Court to oversee the Executive's conduct in foreign relations as well as military operations.  But there is "no doubt that decision-making in the fields of foreign policy and national security is textually committed to the political branches of the government."  *Schneider*, 412 F.3d at 194.  *See also Joo v. Japan*, 413 F.3d 45, 52-53 (D.C. Cir. 2005) (adjudication that "would undo" Executive's judgment in foreign policy "would be imprudent to a degree beyond our power"); *Schneider v. Kissinger*, 412 F.3d 190, 197 (D.C. Cir. 2005) ("pass[ing] judgment on the policy-based decision of the executive" in foreign policy "is not the stuff of adjudication").  And similarly "[w]ithout doubt, our Constitution recognizes that core strategic matters of war-making belong in the hands of those who are best positioned and most politically accountable for making them."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 531 (2004) (plurality opinion).

**B.     Ruzatullah Has Not Met the Applicable Standard for Preliminary Relief**

Consideration of the various factors that apply on a motion such as this one, for interlocutory affirmative relief, demonstrate that the motion must be denied.  It is well-established that a request for preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Cobell v. Norton*, 391

F.3d 251, 258 (D.C. Cir. 2004). To prevail on a request for a preliminary injunction, a movant "must 'demonstrate 1) a substantial likelihood of success on the merits, 2) that [he] would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction.'" *See Katz v. Georgetown Univ.*, 246 F.3d 685, 687-88 (D.C. Cir. 2001) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)). The irreparable harm that must be shown to justify a preliminary injunction "must be both certain and great; it must be actual and not theoretical." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). Petitioner's motion fails to make the showing required to justify the grant of injunctive relief.

As discussed above, Ruzatullah has no likelihood of success on the merits. The balance of equities also do not favor him. Ruzatullah seems to suggest that he faces irreparable harm because his lawyers do not have information about his status in the Afghan penal system, and that because some Afghans have received capital punishment for committing various crimes under Afghan law, he might be as well. This lack of information, however, hardly constitutes the type of irreparable harm warranting preliminary relief. Speculative harm cannot justify a preliminary injunction. *See Wisconsin Gas Co.*, 758 F.2d at 674 (the irreparable harm that can justify a preliminary injunction "must be both certain and great; it must be actual and not theoretical").

Importantly, petitioner has not demonstrated how an order requiring respondents to provide the information in question would forestall any action by IRoA with respect to Ruzatullah or his status. This failure on petitioner's part is particularly significant given that any

11

information that respondents would provide would necessarily be limited.  As explained in the declaration of Colonel Zabek submitted in connection with respondents' supplement to their Motion to Dismiss,

> The ANDF is entirely controlled by IRoA Ministry of Defense.  The United States military does not supervise or oversee the ANDF.  Additionally, it does not control the operations of the ANDF nor access to its detainees.  It also does not control the future disposition of the detainees at the ANDF.

Zabek Decl., ¶ 2.  As Colonel Zabek explained, Ruzatullah's release, continued detention and/or prosecution is entirely within the discretion of IRoA under Afghan law.  *Id.* ¶ 4.  Petitioner has made no showing that the United States is privy to the inner-workings of IRoA's justice system, and there is no legal basis to compel the Executive to make diplomatic inquiries to a foreign sovereign concerning the status of that sovereign's detention and prosecution of its own citizens.  Because petitioner's apparent interest is in obtaining first-hand information about the intentions of the Afghan authorities as to his situation, he can hardly claim that he needs a court order requiring respondents to provide him with second-hand information.  In fact, petitioner has not demonstrated that he has tried to obtain information about his status directly from the Afghan government.  All he has said in the papers filed to date is that attorneys from the International Legal Foundation in Afghanistan ("ILF-Afghnistan") had difficulty accessing him in July 2007, shortly after his transfer to ANDF (but that his family nevertheless was able to visit him at ANDF).  *See* Pet. Ruzatullah's Opp. to Respondents' Suppl. to Mot. to Dismiss (dkt. #25); *id.*, Ex. 2 (Information from Ahadullah Azimi).  The motion gives no indication as to what has transpired since July and whether attorneys from the ILF-Afghnistan have since been able to visit

former Bagram detainees there. In any event, this is a matter between IRoA on the one hand, and Ruzatullah and his counsel, on the other hand.

In contrast, the harm to respondents from an order requiring the Executive to report to the Court concerning the status of a foreign national captured abroad during an on-going armed conflict and transferred to a foreign sovereign would be significant. This is so because such an order necessarily would compel the United States to make diplomatic inquiries to obtain the information, thus infringing on the Executive's power to conduct foreign relations and military operations. *Cf. U.S. ex rel. Keefe v. Dulles*, 222 F.2d 390, 394 (D.C. Cir. 1955) (in case involving U.S. soldier in French custody, court declined to issue injunction requiring Executive Branch to obtain soldier's release through diplomatic negotiations; "the commencement of diplomatic negotiations with a foreign power is completely in the discretion of the President and the head of the Department of State, who is his political agent. The Executive is not subject to judicial control or direction in such matters."). At a minimum, such a reporting obligation would "compromise the very capacity of the President to speak for the nation with one voice in dealing with other governments" something of which the Supreme Court has disapproved. *See Crosby v. National Foreign Trade Council*, 530 U.S. 363, 381 (2000). A reporting requirement, after all, would mean that the results of diplomatic dialogue between the Executive Branch and a foreign government are subject to the supervision and review of another Branch (*i.e.*, the Judiciary). This type of intrusion clearly would pose significant harm to the public interest. As one Judge of this Court has held:

> [T]here is a strong public interest against the judiciary needlessly
> intruding upon the foreign policy and war powers of the Executive
> on a deficient factual record. Where the conduct of the Executive

13

conforms to law, there is simply no benefit – and quite a bit of detriment – to the public interest from the Court nonetheless assuming for itself the role of a guardian ad litem for the disposition of these detainees. *See People's Mojahedin Org. v. Dep't of State*, 182 F.3d 17, 23 (D.C. Cir. 1999) ("[I]t is beyond the judicial function for a court to review foreign policy decisions of the Executive Branch.").

*Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 199 (D.D.C. 2005) (Bates, J.). In sum, the balancing of equities tips in favor of denying petitioner's motion.

## CONCLUSION

For the reasons provided above, petitioner's motion for a report should be denied.

Dated: October 22, 2007                                  Respectfully submitted,


                                                         PETER D. KEISLER
                                                         Assistant Attorney General

                                                         DOUGLAS N. LETTER
                                                         Terrorism Litigation Counsel


                                                            /s/   Jean Lin
                                                         JOSEPH H. HUNT (D.C. Bar No. 431134)
                                                         VINCENT M. GARVEY (D.C. Bar No. 127191)
                                                         JUDRY L. SUBAR (D.C. Bar No. 347518)
                                                         JEAN LIN
                                                         ANDREW WARDEN
                                                         Attorneys
                                                         United States Department of Justice
                                                         Civil Division, Federal Programs Branch
                                                         20 Massachusetts Ave., N.W.
                                                         Washington, DC  20530
                                                         Tel:  (202) 514-3716

                                                         Attorneys for Respondents